No. 11,354.

## C. S. BURT COMPANY vs. WIDOW B. LAPLACE.

The plaintiffs agreed with the defendant to furnish boilers and other machinery for the amount of seven thousand three hundred and thirty dollars.

The bagasse burner, part of the machinery, constituted nine hundred and seventy-five dollars of the amount.

If the bagasse burner, it was stipulated, did not prove of advantage to the defendant, the plaintiffs bound themselves to pay the grinding season's plantation fuel bill.

The plaintiffs claim the unpaid balance of two thirds of the whole amount, and contend that they have complied with the contract.

The defendant in her reconventional demand alleges that there was failure of compliance on the part of plaintiff. The evidence shows that the bagasse burner was the only defective portion of the machinery furnished.

She asks from the seller the one-third paid by her; to be relieved from the pay-
ment of any balance on the seven thousand three hundred and thirty dollars
and that he be condemned to remove the machinery and pay her damages.

APPEAL from the Civil District Court, Parish of Orleans.
Rightor, J.

Harry H. Hall Attorney for Plaintiffs and Appellants:

Plaintiffs agreed to furnish defendant with certain machinery for
seven thousand three hundred and thirty dollars, of which
amount nine hundred and seventy-five dollars was to be paid for
a bagasse burner.

It was agreed in the contract that if it should be shown that the
" bagasse burner did not properly consume bagasse so as to
prove of advantage " to the purchaser, the seller would pay the
plantation fuel bill for the season.

The seller sued for the unpaid two-thirds of entire purchase price,
alleging his compl ance with all his obligations under the con-
tract. The purchaser reconvened, alleging that the bagasse
burner was defective, and asked that he be relieved from paying
the balance of purchase price; that he recover from the seller
the one-third of seven thousand three hundred and thirty dollars
paid; that the seller be ordered to take back the machinery and
burner, and that he be condemned to pay the penalty stipulated
in the contract, to-wit: the plantation fuel bill for the season.

The evidence shows that all the machinery, except the bagasse
burner, costing nine hundred and seventy-five dollars, gave
complete satisfaction.

The judgment of the lower court annulled and avoided the contract,
ordered the seller to refund the one-third of purchase price,
seven thousand three hundred and thirty dollars, which had been
paid to him, relieved the purchaser from paying the remaining
two-thirds, and then enforced the penalty of the annulled contract
and condemned the seller to pay the purchaser's coal bill of seven
hundred and fifty dollars.

Nullity and rescission imply the total avoidance of the covenant for
some inherent defect therein. The dissolution of a commutative
contract for non-compliance is really carrying into effect a part
of the convention, either express or implied. It excludes the
idea of nullity or rescission. 11 An. 655, Rogron, Cap. 5, Sec.
7; Troplong, Vente, No. 689; 4 Marcadé, No. 570.

Hence there was error in annulling the contract; and yet, in enforcing the penalty, if there was violation of the obligation, the penalty could be enforced, but only by the maintenance of the contract and the payment of the stipulated price.

The record shows conclusively, moreover, as matter of fact, that the bagasse burner was not defective, but that it met all the requirements of the contract.

---

*Chas. J. Theard* Attorney for Defendant and Appellee:

The plaintiffs sold to defendant, and erected on her plantation, a complete plant or apparatus for the burning and utilizing of bagasse, including boilers, pump, burning outfit, and all other necessary machinery.

By the contract it was expressly stipulated that the burner should consume the bagasse from four hundred and fifty tons of cane daily, and with it make the full steam capacity of the boilers.

The contract price was seven thousand three hundred and thirty dollars, of which two thousand four hundred and forty-three dollars were paid by defendant to the plaintiffs before the machinery was erected.

The machinery proved to be very defective and entirely insufficient for the object for which it was intended.

The plaintiffs sue defendant for the balance due on the contract. She denies any indebtedness, and claims in reconvention the return of the money paid by her and the damages suffered by her.

There is nothing inconsistent in the demand that the contract be rescinded and that damages be allowed in addition where the contract has not been performed or has been defectively executed. And in' such a case no putting *in mora* is required.

Lobdell vs. Parker, 3 La. 328; Morton vs. Pollard, 9 La. 174; Conery vs. Noyes, 17 An. 201, 203; Nicholson vs. Desobry, 14 An. 81; Goodloe vs. Rogers, 9 An. 273, and authorities there cited.

The fact that the contract itself stipulates what damages may be recovered does not affect the right to demand the rescission of the sale and damages in addition. It fixes the measure of damages; that is all.

Nor is the compulsory use of the defective machinery, during defendant's grinding season, a waiver of her claim for damages. Levi vs. Schwartz & Golding, 34 An. 209.

The opinion of the court was delivered by

BREAUX, J. The defendant having determined to change the sugar mill and engine, and to erect other evaporating pans for the purpose of economizing steam in her sugar house, resolved also to buy steam tubular boilers, drums, feeders, spouts and pumps, together with a Gordon Patent Hollow Blast Bagasse Burner.

She contracted with the plaintiffs to furnish part of these improvements.

The plaintiffs bound themselves to furnish the boilers to measure seventy-two inches in diameter and twenty feet long, and erect them on the plantation, and to furnish expert labor for that work—that is, to place them in position to put on the bricks. The defendant agreed to do the brickwork and furnish the material and labor to incase the boilers.

When delivered and ready for the brickwork the price of the four boilers and attachments was five thousand eight hundred and twenty-five dollars.

She also contracted for two batteries with three automatic feeders. to feed and properly distribute bagasse for the price of five hundred and thirty dollars.

For the Gordon Bagasse Burner she was to pay nine hundred and seventy-five dollars.

The vendors, in order to fully impress upon the defendant the efficiency of the burner, agreed to pay all coal or other fuel for the crop, if the burner did not consume the bagasse, as agreed it should, and prove an advantage to the purchaser.

The guaranteed stipulation in the contract was limited to the bagasse burner.

The terms of payment of the total amount stipulated in the contract were: one-third upon delivery of the materials and apparatus at the plantation; one-third after the erection of the burner, and the remainder after the test and use, on the 5th of January, 1893.

The plaintiffs collected one-third of the amount.

The defendant having refused to pay the remainder, the plaintiff brought suit for the amount claimed as due.

The defendant interposed a general denial, save certain admissions substantially, that the plant sold by plaintiffs was sold for one price in three equal instalments, and that all the machinery sold was dependent upon the satisfactory working of the burner.

That the tests made proved that the plaintiffs failed to comply with the contract.

She avers that she is not bound to pay the amount stipulated in the contract and that she is entitled to demand the nullity of the contract.

In her reconventional demand she claims damages aggregating twenty thousand nine hundred and fifty dollars. The prayer of the answer is that plaintiffs' demand be rejected and that upon her reconventional demand there be judgment in her favor in one sum of two thousand four hundred and forty-three dollars, in another sum of ten thousand nine hundred and fifty dollars, and in a sum of ten thousand dollars, with legal interest on each.

The judgment of the District Court annuls the contract; orders the return to the defendant of the first instalment of two thousand four hundred and forty-three dollars paid by her and condemns plaintiff on the reconventional demand to pay the defendant six thou and seven hundred and fifty dollars damages, with interest. A *remittitur* for the interest was subsequently entered.

From this judgment the plaintiff appeals.

Though the Gordon Patent Hollow Blast Bagasse Burner proved satisfactory in a number of sugar houses and sugar mills, for causes not clearly demonstrated it is a failure in defendant's sugar house.

Witnesses testify as to the value of the apparatus as a bagasse burner in other localities.

The combustion is spoken of by these witnesses as being rapid, and that it makes sufficient steam. This, however, is not the case on defendant's place, where it only makes a black smoky fire and at times is clogged with bagasse.

The plaintiff was notified of the defect.

He and others connected with plaintiff's firm repaired to the place but it seems did not succeed in obtaining satisfactory results in the working of the burner.

Finally it was agreed to make a test of the apparatus on the 29th of December while the sugar house was in operation.

At the appointed time the interested parties and a number of witnesses were present and the test was made.

The contract contains the stipulation, requiring a burner to each battery with blast bars, intermediate bars, blower, piping gates complete to burn bagasse and with it to generate the full steam capacity

of the boilers, supplied with bagasse, at the rate of four hundred and fifty tons daily, or if less number of tons were supplied the steam pressure to be proportionately less.

The test was made in accordance with the conditions of the contract. No objection was urged to the method adopted for the experiment. It is proved that the bagasse was not different from the bagasse made by other mills.

The steam from other boilers than those sold by the plaintiffs was cut off and the burners fed with bagasse were the only steam-producing power.

The burners became clogged with bagasse and the steam pressure declined and most of the time the mill was stopped.

In seventeen and a half minutes' time the pressure was reduced from seventy-five pounds to about thirty-seven pounds.

There were planters present of experience, disinterested witnesses, who testified that the bagasse was poorly consumed; that there was but little heat in the burner and the operations were not those of an efficient burner. There were a number of machinists present who testified that it burnt the bagasse incompletely, and that it was altogether an absolutely defective burner.

The plaintiff testified that he made a test a short time preceding. It was the evaporation test on scientific principles.

It is not shown that this test was made contradictorily with the defendant or that any disinterested witnesses were called to witness the experiment. The result is that the correctness of that test is not sustained by the weight of the testimony.

There was no objection offered to the practical manner followed in testing the power of the steam produced, though it is not as accurate as the evaporation test, it is that generally followed in testing steam power; it proved for all practical purposes that the burner was not the burner plaintiffs agreed to furnish and deliver to the defendant.

If it was possible to show error it should have been established contradictorily, or in view of a number of witnesses sufficient to prove its correctness.

The contract shows that plaintiffs engaged themselves by the declaration "that coal or wood can be burned better than with the ordinary furnace if no bagasse is at hand, but in any event they guarantee to give more steam than any other furnace with the same amount of like fuel."

The experiments prove that this guarantee failed.

The unverified evaporation tests of plaintiff do not suggest that in any respect the burner was efficient and not a failure.

The reconventional demand is more particularly directed against the unsatisfactory and defective burner.

The proof shows that all the difficulties in operating the machinery were caused by the insufficiency of heat from the burner.   It did not develop the capacity of the boilers.

It is not proved that the boilers are defective in material.   The workmanship was not objectionable in any particular.   They were of the quality and make required by the contract.

The defendant's contention on this point is that it is an entire contract and that a partial failure is equal to a total failure.

There was error doubtless, but the vendors acted in good faith. There is no fraud charged and the record does not disclose that they knew of the defect of the burner.

The defect of the burner caused a partial failure of consideration.

The fact remains that the defendant has received and used boilers that are not defective.

There was a partial performance, severable from the partial failure.

The dividing line between the two is clearly marked.

The failure is not in so material a point as to affect the entire contract.

These boilers were used during the grinding season without the discovery of any defect.

They have value, and all the qualities and power guaranteed in the contract.

They were sold for a special price.   It is distinct from the price of the remainder of the machinery, though included in the same contract, and forming part of the total for the whole machinery.

The difference between these prices is great, and suggests that the defective part is not an essential.

The purchase price of the burner is of insignificant amount compared with that of the boilers.

The former, the boilers, are complete in themselves and are a consideration without reference to the burners.   They are fit for the use intended.   The defective apparatus does not in the least detract from their value.   The particular burner is not essential to their use. The burner is an accessory.

Upon that subject Troplong (Vente 579) clearly says:

" With reference to the accessories of the thing sold they follow the principal. If a horse with saddle and bridle has been sold, in setting aside the sale of the former that of the latter follows.

But if the principal thing was not defective and the accessory was, the cause to set aside the sale is limited to the latter.

" *Mais si la chose principale etait saine et entiere, et* que le vice *rèd-hibitoire tombà seulement sur l'accessoire, la rèdhibition aura. lieu que pour l'accessoire seulement.*"

From Duranton (Vol. 16, Sec. 318) we quote: " *D'aprés ce principe si je vous vends mon domaine avec les six chevaux de labour qui y sont, je suis garantie des vices dont seraient infectés ces chevaux ou quelques uns d'entre eux, quand bien même la vente ne serait faite que pour un seule et même prix. Toutefois il n'y aurait pas lieu, dans ce cas, a l'action redhibitoire mais seulement a l'action quanti minoris ou en diminution du prix.*

*Cette distinction est parfaitement établie dans la loi 33 des Aedil. edicto, et Pothier l'a adoptée dans son traite du contrat de vente.*

From Laurent, Vol. 24, Sec. 292:

*Il ne faudrait pas conclure de là que le contrat doit nécessairement être résolu pour le tout. Cela dépend de l'objet de la vente.*

The question of partial consideration has been discussed in a number of decisions of the courts of this State.

It is announced as correct principle that the right to set aside the contract arises only when the things sold are dependent upon each other, so that the defect of one renders the other useless and without value.

It must appear that the interdependence was the principal motive of the contract. Hale vs. New Orleans, 13 An. 501; Mouton & Bro. vs. Whitely, 12 An. 175; Bertrand vs. Arcueil, 4 An. 430.

The following also applies:

" From this provision the inference is clear that if the several things sold together are independent of each other, and do not form a whole, and if the value of each thing is not increased by its union with the rest, a redhibitory action can be maintained only for those things which are found defective, and that the contract must stand and be carried into effect in relation to the others." Citing 6 Mart. 396; 3 N. S. 100; Pothier de la Vente, Nos. 226, 227, 228.

" The rule is that the redhibitory vice of one of several things sold applies to a limited class of cases." 3 An. 378.

We realize that the question is not free from difficulty.

Our determination in this case was reached after having considered that the boilers and attachments not defective remained and were used, though the defendant had other steam power within her control easily disconnected from the four boilers in question. No offer was ever made to return them and it does not appear that they ever gave cause for objection.

Moreover, though alleged in the body of plaintiff's petition, the prayer is silent in so far as relates to the boilers and their attachments.

The contract contains a stipulation guaranteeing the defendant from loss by defect of the burner.

In express terms, it was made the law of the contract. *Conventio facit legem.* The testimony on this branch of the case is not contradicted.

The number of barrels of coal and the price paid by defendant are proven.

The damages can not amount to less, under the evidence, than the amount allowed by the learned judge of the District Court.

It is therefore ordered, adjudged and decreed that the judgment appealed from be amended and that plaintiffs recover of the defendant the balance due on the apparatus (after deducting the price of the burner) and rejecting and striking from the judgment that portion ordering the return of the two thousand four hundred and forty-three dollars to the defendant by the plaintiffs (amount received on account).

It is further ordered, adjudged and decreed that upon the reconventional demand the judgment of the District Court be and the same is hereby affirmed and the defendant on that demand is allowed judgment against plaintiff for six thousand seven hundred and fifty dollars.

The amount of the original contract was seven thousand three hundred and thirty dollars.

| | |
|---|---|
| From it is deducted the price of the burner and outfit | $975 |
| Amount heretofore paid | 2,443 |
| | $3,912 |

with five per cent. interest *per annum* from October 25, 1892, on half of said amount, viz.: one thousand nine hundred and fifty-six dollars, and a similar rate of interest on a like amount from 5th Jan-

uary, 1893. The three thousand nine hundred and twelve dollars, plus interest as just stated, must be deducted from the six thousand seven hundred and fifty dollars; the remainder is the amount the plaintiffs are condemned to pay to the defendant.

It is further ordered, adjudged and decreed that plaintiffs are the owners of the bagasse burner and outfit covered by the sum of nine hundred and seventy-five dollars.

That the bagasse burner and outfit be delivered to the plaintiffs, and that they remove it at their expense.

It is further ordered that defendant pay costs of appeal.

Rehearing refused.