## BATES v. LILLY BROKERAGE CO. *
### No. 4989.

Court of Appeal of Louisiana.
Second Circuit.
March 8, 1935.

Hoye Grafton, of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

DREW, Judge.

This is a redhibitory action. Plaintiff alleged that defendant, a foreign corporation, was indebted unto him in the sum of $235, for the following:

That defendant on February 8, 1934, sold to him 200 empty barrels at the price of $1.50 per barrel, or a total of $300; that said barrels were sold on the representation of defendant that they were fit for use as vinegar barrels, knowing at the time that petitioner was in the vinegar business. He further alleges that defendant represented that said barrels had formerly contained food products, which would not make them unfit for containing vinegar.'

Plaintiff further alleged that under the above representations and defendant's implied guarantee that the barrels were fit for the purpose for which they were sold, he bought them and paid the sum of $300, and, upon receiving the barrels, discovered that 150 of them had contained pyroligneous acid, or some other substance which rendered them totally unfit and unsafe as containers for vinegar, which fact was promptly made known to defendant; that plaintiff has requested that defendant furnish disposition of said barrels, has made tender of same, does'now tender the barrels, and is willing to deliver them to any point designated by defendant. ·

Plaintiff further alleged that he had in-' curred an expense of $10 for telephone calls and telegrams, by reason of defendant's default as above set forth. He alleged defendant was a nonresident and permanently out of the state, and that a writ of attachment was necessary to protect petitioner in the premises. He prayed for a writ of attachment to issue and that certain property of defendant, within the jurisdiction of the court, be attached; that defendant be cited through a curator ad hoc; and, finally, for judgment in the sum of $235, and that the writ of attachment be sustained.

The writ issued, and a car of barrels on the track of the I. C. Railroad Company owned by defendant was attached. It was bonded by defendant.

Defendant filed an exception of no cause of action which, by consent, was referred to the merits. Defendant answered and admitted it was a foreign corporation with no place of business within the state; admitted. the sale of the barrels at the price alleged, but denied it represented them as being fit for use as containers of vinegar; admitted plaintiff paid for the barrels; alleged the tender made by plaintiff to be wholly insufficient; and denied it had any knowledge of the intended use of the said barrels or that it had warranted them fit for use as vinegar containers. It averred the sale was made by sample of the barrels defendant had for sale and such samples were inspected and approved by plaintiff, after which the order for a carload of like kind was shipped to plaintiff. Defendant further alleged that plaintiff received the barrels on or about February 8, 1934, inspected and fully approved them and paid for them; that plaintiff made no complaint and immediately made use of a large quantity of the barrels; and on February 12, 1934, ordered another carload of the barrels, which was shipped about February 19th and was the car of barrels attached in this suit.

Defendant alleged it was damaged by the issuance of the writ and asked that its rights to sue for said damages be reserved to it. It specially pleaded compromise and settlement of all claims made by defendant on said car of barrels, and prayed that plaintiff's demands be rejected.

.The lower court overruled the exception of no cause of action and awarded judgment to plaintiff, as prayed for. Defendant has perfected an appeal to this court.

The exception of no cause of action was referred to the merits by consent and necessarily must be considered with the merits of the case. The answer sets up as a defense the same facts upon which the exception is based and, in passing on the merits, we will necessarily pass on the exception. It is based upon the allegation and fact that part of the barrels paid for were used by plaintiff, and that he only tendered 150 of the 200 back to defendant; that he never offered to tender the entire 200 barrels, nor made an offer or tender to place the parties in status quo. In other words, defendant's contention

is that a redhibitory action in all cases is indivisible; that a purchaser cannot retain for himself a portion of the goods bought and sue to rescind the sale of the remainder. Defendant's contention is unsound. If 50 of the barrels were up to specification and fit for the purpose for which they were sold, plaintiff was in law bound to keep that number, and in a suit by plaintiff for a return of the purchase price of the 200 barrels, he could only recover for the 150 defective barrels for the reason that, if several things sold together are independent of each other and do not form a whole, and if the value of each thing is not increased by its union with the rest, a redhibitory action can be maintained only for those things which are found to be defective, and the contract must stand and be carried into effect in relation to the others. C. S. Burt Co. v. Laplace, 46 La. Ann. 722, 15 So. 293.

In Huntington v. Lowe, 3 La. Ann. 377, a case on all fours with the case at bar, involving a number of hogsheads of pork, a part of which was defective and damaged, the court said: "But it is said that, when the plaintiff was dissatisfied with the sale, he should have tendered the return of the whole, and had no right to keep the sound part, reaping the profit of an improved market, and returning only the unsound. The rule that the redhibitory vice of one of several things sold together gives rise to the redhibition of all, applies to a limited class of cases; those where one of the things would not have been bought without the other. The illustrations given in our Code are, a pair of matched horses or a yoke of oxen. The rule is obviously a reasonable one, and we have borrowed it from the Roman law. 'Quum autem jumenta paria veneunt, edicto expressum est ut, cum alterum in ea causa sit ut redhiberi debeat, utrumque redhibeatur; in qua re tam emptori quam venditori consulitur, dum jumenta non separantur.' But when the things are independent of each other, the redhibitory action lies for that which is affected with the redhibitory vice. The example given by the civilians is, a lot of unmatched horses or a flock of sheep. If one proves to have been unsound, the partial dissolution of the sale is permitted. See Duranton, vol. 16, § 319. Troplong, Vente, 578. Voet, lib. 21, tit. 1, de Ædil, edict."

Certainly the sale of 200 empty secondhand barrels sold together at a price of $1.50 per barrel is independent of each other and does not form a whole, and the value of each barrel is not increased by its union with the rest.

Defendant in answer denied that it warranted the barrels to be fit for use as containers for vinegar and averred that it had no knowledge of the intended use of same. This defense is so clearly refuted by the telegrams and letters between plaintiff and defendant prior to the purchase of the barrels that it is difficult to understand why the defense was made. On January 4, 1934, defendant wrote plaintiff as follows:

"Mr. Bates, The Arkansas Vinegar Co., Shreveport, La.,

"Dear Sir: Can you use a mixed car of 30 and 50 gallon vinegar barrels in 30 and 60 days delivered? If interested, please advise us at once.

"Yours truly,
"Lilly Brokerage Company
"Louis Klamer."

Plaintiff replied on January 6, 1934, as follows:

"Lilly Brokerage Company, Memphis, Tenn.

"Gentlemen: We are in the market for car barrels any time providing they are suitable for vinegar and the price is right. We pay cash against B/L subject to inspection. State if barrels are old vinegar barrels, Coca Cola or what has been in them.

"Arkansas Vinegar Company,
"J. D. Bates, Manager.

"P. S. Klamer, you know what kind of barrels we can use and we can use straight car full barrels but the price must be right. Why don't you come and see us some time?"

On January 9, 1934, defendant replied as follows:

"Arkansas Vinegar Company of Louisiana, Shreveport, Louisiana.

"Attention of Mr. Bates:

"Dear Mr. Bates: At present we have a mixed car of barrels. Some are coca cola barrels, which were last used for food products, and also, malt barrels, and cereal barrels. All these barrels will be coopered and paraffined. I can offer you these barrels at one dollar and ($1.65) sixty-five cents, delivered Shreveport.

"Mr. Bates, I am shipping you one one dozen of these barrels open for your inspection. I am sure that you can use these barrels. They will cost you one dollar and ($1.-65) sixty-five cents as stated above, delivered in carload lots, sight draft.

"We hope that you will favor us with your order.

"Yours very truly,
"Louis Klamer."

On January 22, 1934, after other correspondence which is not material, and after

defendant had shipped plaintiff 10 barrels as samples, plaintiff wrote defendant as follows:

"Mr. L. Klamer, Lilly Brokerage Co., Memphis, Tenn.

"Dear Mr. Klamer: I enclose check for 10 mty. bls. @ $1.50 each less freight bill enclosed, this is all I can pay for these barrels as we are buying them at that figure. If you would care to ship car @ $1.50 delivered Shreveport, I will take it. You might ship via the Barge line and save enough to make that price, but we cannot pay any more than we are paying the other fellow. The barrels you understand are all to be as good as the samples you sent and suitable for vinegar, that is no creosote barrels or any with objectionable odor. Let me hear from you so I will know what to expect as am going to order a car in a few days from my other people if you cannot ship.

"Best regards,
"Sincerely yours,
"J. D. Bates.

"P. S. Mc was over to see me last summer. Brought some barrels. He is in Dallas in barrel business or was at that time."

On January 23, 1934, a reply was made by defendant as follows:

"Arkansas Vinegar Company of La., Shreveport, Louisiana.

"Attention of Mr. J. D. Bates:

"Dear Mr. Bates: Regarding your letter of January 22, I am going to let you have this carload of barrels at $1.50 delivered. I am getting $1.75 from my customers here in Memphis. I don't want you to give this information to anyone else, as I happened to buy these barrels cheaper than usual.

"I am having these barrels coopered and paraffined just the same as the samples I sent to you. They are red barrels mostly.

"As stated in my first letter to you, I can ship these sight draft in the next three weeks. That will give me plenty of time to cooper these for you and to inspect them thoroughly.

"I am glad to hear that Mac was in to see you last summer. I lost track of him some time ago. I hope he succeeds without me.

"Sincerely yours,
"Louis Klamer."

Plaintiff replied as follows:

"Mr. Louis Klamer, Lilly Brokerage Co., Memphis, Tenn.

"Dear Mr. Klamer: It will be O. K. to ship barrels within three weeks. The main thing is to give them your O. K. and see that they are O. K. when you do it. I know you know a barrel so give me a good car barrels, Klamer, and I will give you some business. Draw draft through First National Bank, Shreveport. With best regards.

"Sincerely yours,
"J. D. Bates."

On February 6, 1934, defendant by letter notified plaintiff he was loading the car of barrels, stating that they had been paraffined and coopered the same as the samples he had previously sent. In the face of these letters, all of which were signed by defendant, by its agent, Louis Klamer, and especially the letter of January 9, 1934, in answer to interrogatory No. 21 propounded to him by counsel for defendant, Klamer testified as follows: "Q. Did you at any time prior to the shipment of the 200 barrels to Mr. Bates or the Arkansas Vinegar Company represent or warrant, either verbally or in writing, that the barrels had previously contained food products? A. No. Letter of January 9th stated some of the barrels had been used for food products."

We quote this testimony for the reason that there is a conflict in Klamer's testimony and the testimony of plaintiff as to when plaintiff complained of the odor of the barrels, and where the testimony of Klamer is so different and contradictory of his written letters, we can easily understand why the lower court accepted the testimony of plaintiff over that of Klamer. Klamer testified that there was no complaint of the odor of the barrels until a telegram from plaintiff on February 22, 1934, or fourteen days after receipt of the barrels by him.

The true facts in the case are given by plaintiff and he is corroborated by other witnesses. He received the barrels on February 8, 1934, and when the car was opened, he noticed a peculiar odor. He tore the head out of one barrel and found it had not been paraffined, having only a little paraffine around the bung. He immediately got in touch with defendant by telephone and complained of the odor, also of the barrels not having been paraffined. After some discussion, defendant agreed to stand half the cost of paraffining the barrels and told plaintiff the odor was due to some of the barrels having contained Figaro, a food product, which in fact was a meat soap. Plaintiff had never used barrels containing Figaro and did not know they were unfit for containing vinegar. He paraffined the barrels, for which defendant sent a check for $5, which was one-fourth the cost, instead of one-half. He then put some vinegar in one of the barrels, supposed to have previously contained Figaro, and, after a few days, the odor began to taste in the

vinegar and increase from day to day until it got to where the vinegar could not be used. About that time the second car of barrels which plaintiff had ordered on February 12, 1934, arrived. Some of the first lot of barrels had been on the porch of plaintiff's storehouse and the rain had washed the paint off the end of the barrels where they had been painted over, and plaintiff then discovered, written on the end of the barrels, "Pyroligneous Acid." He then scraped the paint from the other barrels and discovered that 150 of them had contained this acid. He called a chemist who informed him that a barrel once containing this acid could never be used to contain vinegar for the reason that the odor taken up by the wood from said acid would persist and would ruin the vinegar for use. Plaintiff at that time wired defendant asking a return of payment for the 150 barrels which he found had formerly contained the acid and requested disposition of the barrels. His request was refused. He immediately filed this suit and attached the car of barrels on the track of the I. C. Railroad Company.

■■ The defense of compromise and settlement is based upon the agreement of defendant to pay one-half of the cost of paraffining the barrels, and is wholly without merit. Under the contract to purchase and sell, defendant was obligated to paraffine the barrels and failed to do so. It should have been forced to stand the entire cost, instead of only one-half. Plaintiff made every effort to use the barrels, and as soon as it was possible for him to be sure he could not do so, he notified defendant. He was not negligent in any way in inspecting the barrels and rejected them within a reasonable time. In the meantime he picked out 50 of the barrels which had contained lard and used them. This was before he was certain the remaining 150 could not be used.

The facts in this case differentiate it from the cases cited by defendant, viz., Wrenn v. Lafayette Furniture Co., Inc. (La. App.) 151 So. 148; William Whitman & Co. v. Solomon (La. App.) 144 So. 292; Goode-Cage Drug Co. v. Ives, 16 La. App. 383, 133 So. 813; and the ruling in these cases is not inconsistent with this opinion.

■ Defendant further contends that the sale was made by sample and in such cases, if the bulk of articles sold agrees in quality with the sample, the contract is fulfilled. We agree with this law, but the 10 barrels sent as samples were fit for use as containers of vinegar and were so used by plaintiff, and, even though we should find that the sale was made by sample alone, the defense would not prevail under the facts in this case.

We find no error in the judgment of the lower court and it is therefore affirmed, with costs.