(101 South. 122)

No. 24585.

## FAIRBANKS, MORSE & CO. v. BONEY.

(June 28, 1924.)

*(Syllabus by Editorial Staff.)*

1. Sales ⊜181(12) — Evidence held not to show inherent defects in tractor.

In an action on notes representing balance due on purchase price of tractor, evidence *held* not to support claim of inherent defects in the tractor.

2. Sales ⊜89—Defendant's evidence held not to sustain burden of proving reconventional demand on new agreement.

In an action on notes representing balance due on purchase price of tractor, defendant *held* not to sustain burden of proving with reasonable certainty a reconventional demand on an agreement whereby notes would be canceled and defendant would receive in exchange for tractor a new tractor of a smaller type.

3. Sales ⊜176(5)—Seller entitled to recover price, where buyer retained tractor for four years with knowledge of its defects.

Where buyer retained tractor sold for nearly four years, and used it in the promotion of his business with full knowledge of its defects, seller is entitled to recover the price thereof.

Appeal from Ninth Judicial District Court, Parish of Madison; F. X. Ransdell, Judge.

Action by Fairbanks, Morse & Co. against Richard K. Boney. From the judgment rendered, plaintiff appeals. Judgment set aside, and judgment rendered for plaintiff.

Monroe & Lemann, of New Orleans, James H. Gilfoil, Jr., of Lake Providence, and Walter J. Suthon, Jr., of New Orleans, for appellant.

Richard K. Boney and John B. Stone, both of Tallulah, and Chambers & Trenholm, of Jackson, Miss., for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff sues on three promissory notes, representing the balance due on the purchase price of a 30–60 H. P. tractor and a 2 H. P. electric engine. The notes aggregate $2,500.

Defendant admits the execution and delivery of the notes. He makes no complaint regarding the electric engine, but denies liability because (1) he was induced to purchase the tractor by false and fraudulent representations; (2) of redhibitory defects in the tractor.

Defendant, in his answer, further sets up an alleged agreement of settlement wherein it was stipulated that the notes would be canceled and plaintiff would replace the tractor by another tractor of a different type.

The prayer is for the rejection of plaintiff's demand, the cancellation and return of the notes, for recognition of defendant's ownership of the electric engine, and for judgment in reconvention requiring plaintiff to deliver to defendant the new tractor, or for $1,500, the value thereof.

The court below ordered the notes canceled and returned to defendant and adjudged plaintiff to be the owner of the tractor and defendant to be the owner of the electric engine. The judgment is silent on the reconventional demand.

Plaintiff appealed, and defendant answered the appeal, praying that the judgment be amended, so as to allow his reconventional demand.

[1] Under a written contract, executed in August, 1912, plaintiff sold defendant a 30–60 H. P. tractor and a 2 H. P. engine, receiving in payment therefor three notes, aggregating $2,500 (of which the notes herein

sued on are renewals), and a secondhand 32 H. P. gasoline engine, valued at $700.

Certain warranties on the part of the vendor are stipulated in the contract. One of them is that the tractor, if properly cared for and operated, "will prove a practical engine for operating the gin plant" and for "plowing the lands" of the purchaser "at any time any tractor of a like type will do said plowing." Another warranty is that the tractor is made of good material, with the obligation on the part of the vendor, within one year from the date of sale, to correct free of cost any defects either of workmanship or in material. It is also provided that continued use of the tractor for ten days, without written notice of a claimed breach of warranty, shall be conclusive evidence that the warranty is fulfilled to the entire satisfaction of the purchaser, who agrees thereafter to make no further claim under said warranty.

The tractor was delivered to defendant's plantation on October 5, 1912, and was placed in operation within a few days thereafter. Although the tractor sustained several breakdowns, it was used by defendant until September 18, 1916, a period of almost four years, when he discontinued its operation. During this time defendant used the tractor for running his cotton gin, plowing his fields, and threshing his oats.

Defendant testified to three general breakdowns and several minor breakdowns during the period of operation.

The so-called first general breakdown occurred on October 19, 1912. This was three days after the tractor was first turned over by plaintiff's erector to defendant's employé for operation. Prior to that time the tractor had been satisfactorily used for several days for plowing and ginning.

This breakdown was the result of an injury to a connecting rod due to the breaking of a bolt on that rod while the tractor was being operated. The damage was repaired by plaintiff's representative in one day, after the new parts for replacement had been received. The tractor was satisfactorily operated all of the next day, and was redelivered to defendant in that condition on November 9, 1912. On the same day defendant addressed plaintiff the following letter, viz.:

"Nov. 9, 1912.
"Fairbanks-Morse & Co.—Gentlemen: The repairs made by A. C. Boyd is running in a satisfactory manner, is properly done and is accepted. [Signed] R. K. Boney."

The next general breakdown complained of by defendant occurred on February 20, 1914. The repairs were again made by plaintiff. This breakdown was due to the act of defendant in operating the tractor with old or loose bolts, pending the arrival of new bolts which he had previously ordered from plaintiff. After the completion of the repairs, little or no difficulty was encountered by defendant's employee in operating the machine.

The alleged final breakdown took place on September 18, 1916. On that date, while the tractor was being used for plowing, one of its two channel bars broke. The channel bars one on either side constitute a portion of the main frame of the machine. The injury to the frame was only a partial and not a complete fracture. The cause of the breakage was not definitely shown. Whether it was due to defective construction, to improper operation, or to other causes, does not clearly appear. Defendant propounded the theory that there was a slight variation in the thickness of the metal between the center and the ends of the channel bar resulting in weakness at the center where the fracture is alleged to have occurred. The evidence in support of this theory however is not convincing. It is not conclusively shown that there was any difference in thickness of the channel bar at the points mentioned and it is difficult to conceive how the breakage could have been due

to defective construction since it occurred long subsequent to the expiration of the replacement warranty of one year and after nearly four years of active operation of the tractor. The evidence shows that defendant's entire cotton crop for the years 1912, 1913, 1914, and 1915 was ginned with the tractor, which was also used during said period for plowing and for threshing oats.

The injury to the channel bar can hardly be accepted as a justification for the abandonment by defendant of the use of the tractor, and as releasing him from liability on his notes. The evidence shows that the damage could have been easily and efficiently repaired by means of a plate attached to the frame at the point of fracture.

During the time the tractor was in use several minor breakdowns occurred. In each instance only small parts of the machine were broken. These broken parts were replaced by plaintiff without cost to defendant. Whenever called upon, plaintiff sent a representative to examine the machine to make adjustments and repairs. After these adjustments and repairs were made, the tractor always functioned satisfactorily.

The tractor was operated for defendant during the entire period by one of his negro plantation hands. This man had previously operated other Fairbanks-Morse engines, but, with the exception of some little experience in running an old steam tractor he had never operated any other tractor prior to taking charge of the one sold by plaintiff to defendant. His only mechanical training was derived from performing work of this character on defendant's plantation. He seems to have been fairly able to start, stop, and operate the tractor so long as it required no work of a mechanical nature. He was incapable, however, of properly caring for the machine. Most of the breakdowns were apparently due to the failure to tighten loose bolts, to keep the cooling system supplied with water, or to lack of lubrication within the cylinders.

This operator testified that his main difficulty was in getting the engine started. While he admits that he was able to get it started most of the time, he stated that there were occasions on which he could not start it. He assigned no reason for this inconsistency on the part of the engine. It is easy to conclude that the various accidents to the tractor were occasioned by the fault of its operator rather than by inherent defects in the machine itself.

In addition to the letter of November 9, 1912, referred to supra, defendant wrote plaintiff under date of June 26, 1913, stating that the tractor was running to his entire satisfaction. Defendant also addressed plaintiff two letters in the form of testimonials, one dated November 11, 1912, and the other dated June 26, 1913, in which he goes into details concerning the operation of the machine. Both of these letters contain language indicative of defendant's satisfaction with the excellent service he was receiving from the use of the tractor.

The statements of defendant, in his letters, are irreconcilable with his present contention that the tractor never operated satisfactorily and that he is not obligated for the balance due on its purchase price.

The fact that plaintiff has discontinued the manufacture of tractors of the type in question is unimportant. It is shown that plaintiff took this step in line with a policy involving the elimination of numerous types of engines, in order to increase the quantity output of the engines of the types retained, thereby cutting down the cost of production and reducing the selling price. This action was in accordance with sound business principles, and is one frequently resorted to by manufacturers to insure effective operation.

In so far as the averment of defendant that he was induced to purchase the tractor by

false and fraudulent representations is concerned, it is sufficient to say that it is not supported by the record. It must be, therefore, entirely disregarded.

[2] The basis of the reconventional demand is an alleged agreement, asserted by defendant to have been entered into with plaintiff during November, 1915, whereby his notes would be canceled and he would receive in exchange for the tractor in question a new tractor of a smaller type.

Defendant urges that the contention is without merit, because the alleged compromise was not reduced to writing as provided by the terms of Civil Code, art. 3071. We do not find it necessary to pass upon this point.

Defendant, as plaintiff in reconvention, has not met the burden resting upon him to prove his demand with reasonable certainty. The evidence shows that there was no definite agreement, consented to and understood by both parties in all essential details. Defendant's testimony is that the agreement was reached in November, 1915, in a conversation which he had with the manager of plaintiff's New Orleans office. The testimony of this manager is that defendant offered him the proposition, which he was without authority to accept; that he so informed defendant, and advised him that he would have to submit it to plaintiff's Atlanta office. This was done. The Atlanta office was unwilling to cancel defendant's notes, but approved the exchange, conditioned upon the payment in full of defendant's obligations. The counter proposition was unacceptable to defendant, and the matter went no further.

In view of defendant's complaints, plaintiff has made him substantial financial concessions. It waived a year's interest, and granted a year's extension on the notes representing the purchase price. The notes now sued on were taken in exchange for the original notes at the time the concessions were made. Plaintiff bore all expenses of labor and material for the repairs to the tractor. It even paid defendant board for its men while at his plantation making the repairs. Plaintiff also allowed financial concessions of a substantial nature when defendant purchased another oil-burning engine in March, 1913.

[3] Even if it be conceded that the tractor was as defective as defendant now contends for, his continued use of the machine for nearly four years in the promotion of his own business interests, with full knowledge of its imperfections, was an unequivocable act of acceptance, and the vendor is entitled to recover the price thereof.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered that there be judgment in favor of plaintiff, Fairbanks, Morse & Co., against defendant. Richard K. Boney, condemning said defendant to pay said plaintiff the full sum of $2,500, with 6 per cent. per annum interest thereon from October 12, 1913, until paid, and 10 per cent additional upon the aggregate sum of said principal and interest as attorney's fees, and that plaintiff's lien and privilege on the machinery, fittings, and appliances as described in his petition be recognized and enforced. It is further ordered that the reconventional demand of defendant be dismissed. Defendant to pay all costs.