No. 8795.
Orleans Appeal.

---

**CHAMPION SHOE MACHINE CO. v. ANTONIO CULMONE, Appellant.**

---

(January 19, 1925, Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Sales, Par. 239.**
When a purchaser of machinery has used it for more than a year before offering to return it to the seller, and has paid several of the notes furnished by him for the purchase price with full knowledge of the defects of the machinery, he must be held to have accepted the machinery, and is therefore bound to pay for it.

(Civil Code, Art. 2534—Editor's Note.)

Appeal from Civil District Court, Hon. Percy Saint, Judge.

This is a suit on sixteen promissory notes. Judgment for plaintiff. Defendant appealed.

Judgment affirmed.

Dart, Kernan & Dart, L. L. Dubourg, attorneys for plaintiff and appellee.

Samuel Wolf, Mark M. Boatner, attorneys for defendant and appellant.

CLAIBORNE, J. This is a suit on sixteen promissory notes.

By an act dated December 1, 1917, the plaintiff sold to the defendant one Champion second-hand Ideal Stitcher for the price of $350, in part payment of which

he paid $40 cash, and for the balance $310 he furnished his thirty-one promissory notes for Ten Dollars each, payable on the first of each ensuing month. The defendant paid fifteen of said notes and defaulted on the remaining sixteen for which plaintiffs claim judgment.

The defendant admitted that he made said notes according to the above act but denied that he owed them for the following reason:

That at the time of making said contract, plaintiff's agent, Misuraco, agreed that the "plaintiffs would obtain and furnish to defendant an appropriate label such as are issued by the Underwriters Laboratories to evidence the approval by said Laboratories of the said machine"; that without such approval the users of plaintiffs' machine are unable to obtain fire insurance at all or only at increased rates of premiums; that plaintiffs have failed, notwithstanding frequent demands, to procure such approval and label; that plaintiffs repeatedly promised to procure said label; that relying upon said promise the defendant paid the $40 and the fifteen notes falling due on January 1, 1918, up to and including the note due March 1, 1919; that he would not have paid these notes without these promises; defendant now tenders the machine to plaintiff, and prays for judgment in reconvention against the plaintiff for $190.

There was judgment in favor of plaintiffs and defendant has appealed.

The plaintiffs offered in evidence the contract and the 16 notes sued on.

It was admitted that the "Underwriters Laboratories" mentioned in the answer is the Bureau maintained by Fire Underwriters for the purpose of inspecting machines with regard to the fire hazard resulting from their use.

The defendant testified that he did not know either how to read or write nor does Misuraca, plaintiffs' agent, who sold him the machine; he had the machine connected with electric wires after it came into his shop; the Fire Prevention Bureau made him disconnect; then he connected with the meter; the same Bureau would not give him a certificate because the machine did not have a label; he never got a certificate from that Bureau clearing the machine; they would not give it to him because there was no label on the machine; all they gave him was a temporary inspection; the plaintiffs sent Mr. Stewart to fix the machine; Stewart fixed it, but he still had trouble with it; never received a certificate from the Louisiana Fire Prevention Bureau approving the machine, he is sure; the electric wires were all right, but on account of the machine he could not get it; he could use the machine, but if there was any fire in the house he could not get any insurance on account of the machine; he had a fire policy all the time he had the machine; it was never cancelled; he paid $190 and he owes $160.

In rebuttal, George Wellmann testified. He says that since 1918 he has been Chief Electrical Inspector for the Louisiana Fire Prevention Bureau; he has charge of giving certificates and approving machines of the sort sold to defendant. He says:

"We make inspections on application. I don't remember who filed the application for this particular inspection. We went up there and found quite a number of electrical defects. Some of them applied to this particular machine. The machine was not constructed according to the requirements of the National Electrical Code which are the rules we use in the State of Louisiana for making electrical inspections. We also noticed that the machine was not listed by the Underwriters Laboratories as approved. He sent a report of the defects to the defendants. These defects were remedied sometime afterwards. Within a few months he got an application from S. B. Stewart, electrical contractor, to make all the necessary corrections to the defects on the stitching machine, and the heater and controller device that controls

the heat. He went up with Stewart himself and pointed out to him what was necessary to bring the machine up to standard, and Stewart went ahead and corrected the defects and got approval from the Louisiana Fire Prevention on the machine, but they could not issue an approval on the wiring because there were some defects in the permanent wiring in defendant's house, that had no connection with the machine; the plaintiffs submitted the machine to the Underwriters Laboratories for examination and they approved this type of machine; he sent a letter of approval to that effect to Stewart; these letters are kept for two years in a building like the defendant's; he produces a copy of a certificate issued by the Louisiana Fire Prevention Bureau dated September 9, 1921, good for two years; it was the renewal of a former two years' certificate; the fact that the machine did not have the Underwriters Laboratories' label upon it would not prevent the Louisiana Fire Prevention Bureau from issuing a certificate if, on inspection, it thought that the equipment was in such a condition as to be approved; at the time he issued his certificates in this case the machine did not have the label of the Laboratories upon it; at that time there was nothing on the machine which would forfeit the insurance or require a higher premium."

In a letter addressed by the agent of the Underwriters Laboratories to the plaintiff he very wisely says:

"The acceptance of devices installed in their territory is in the hands of the Louisiana Fire Prevention Bureau."

The sole purpose of the Underwriters' label was to facilitate the obtaining of fire insurance. It is evident by the testimony reproduced above that the defendant was enabled to obtain insurance, and that he was insured at all times without any increased premium.

On the trial of the case the defendant found fault with the machine. For fifteen months that he had been using this machine and making monthly payments on account, and writing letters through his lawyers to the plaintiffs, it does not appear that he ever complained to any one of anything else besides the want of the label. When he filed his answer to resist payment of the notes he failed to say a word about any defect in the machine. It was only at the time of the trial of the case on May 9, 1922, nearly five years after he acquired the machine that he uttered any complaint against it. We must conclude that there is not greater merit in that complaint than in the one concerning the label. So thought the judge of the trial court. At any rate, it was too late after he had used it so long to demand a rescission of the sale for that reason. In the case of Templeman vs. Fairbanks, 129 La. 983, the court said on p. 1004:

"It is an undisputed fact that the plaintiff used the machinery for more than a year before offering to return it to the defendant. It is an undisputed fact that plaintiff paid several notes given for installments of the purchase price with full knowledge of many of the defects complained of in his petition. Plaintiff, therefore, must be held to have accepted the machinery."