DREW, J., recused.

No. 3048

Second Circuit

(Second Division)

———

GOODE-CAGE DRUG CO. v. IVES

———

(April 9, 1931.   Opinion and Decree.)
(May 7, 1931.   Rehearing Refused.)

———

Dickson & Denny, of Shreveport, attorneys for plaintiff, appellant.

Craig, Bolin & Magee, of Mansfield, attorneys for defendant, appellee.

STEPHENS, J. The plaintiff alleges that it sold and delivered to the defendant its root beer offer No. 13, which consisted of 50 gallons of root beer syrup, one 17-gallon dispenser, one carbonator, and two dozen root beer steins, for the sum of $346, for which said sum it prays for judgment.

The defendant answered admitting the purchase of the articles, as above described, but denied its liability for the purchase price thereof because of the breach by the plaintiff of certain alleged guaranties and warranties, and prayed that the sale be rescinded, and that the plaintiff's demands be rejected; and, further, that the defendant recover against the plaintiff in reconvention in the sum of $695.25 alleged to have been the profits which the plaintiff guaranteed that the defendant would earn by the use of the articles purchased.

There was judgment in favor of the defendant annulling and rescinding the sale of the articles referred to, and rejecting the demands of plaintiff; and further judgment rejecting the reconventional demand of defendant. The plaintiff appeals, and the defendant has abandoned his reconventional demand.

On or about May 17, 1926, at a time when the defendant was engaged in the operation of a retail mercantile establishment, restaurant, and cold drink stand at Kickapoo, near Gloster, in DeSoto parish, La., he purchased from the plaintiff, through its salesman, Mr. Fred McClure, the above-described articles, designated as the Rochester root beer offer No. 13, for the price of $346. The equipment and materials were duly delivered and the equipment set up by the defendant. Within a week thereafter Mr. Garrett, the salesman for the J. Hungerford Smith Company of Rochester, N. Y., manufacturers of the articles sold, called on the defendant at his place of business, checked over the apparatus and found the same in good order. He gave the defendant some instruction with reference to the amount of sugar to be used in the syrup mixture, and left the premises without hearing any particular complaint from the defendant with reference to the quality of the drink or the expense of making it. In connection with this visit of Mr. Garrett, the defendant testified as follows:

"Q. After he regulated, showed you those things was it not a good drink?

"A. I don't remember that it was a bad drink, I won't say that the drink was no good. I don't remember telling Mr. Garrett that I didn't like the drink, don't believe that I did, I didn't believe the drink was what it was supposed to have been on the start, seemed to me

there was too much carbonated water and not enough syrup."

The defendant continued the use of the equipment and the sale of the drink for approximately three months. During said period he, from time to time, complained of the drink to Mr. McClure as unpalatable, flat, and therefore undesirable.

Upon the trial of the case the defendant produced some six or seven witnesses who testified that they did not like the drink. He himself testified that the cost of the production was far in excess of the amount of the cost thereof as represented by the plaintiff, and that he was therefore unable to make the profit from the production and sale of the drink which had been guaranteed by the plaintiff. He attributed the excessive cost to the large amount of carbonic acid gas required in making the drink. He testified that a drum of gas which cost $5.25 was consumed in a few days, whereas, the evidence shows conclusively that such drum should give service for from six to eight weeks. He made no specific complaint about the excessive cost of the drink until after the suit was filed.

Under the terms of the sale the purchase price did not become due until September 1, 1926. Two days prior to that date the defendant discontinued the use of the equipment and wrote the plaintiff as follows:

"8-29-26

"Goode-Cage Drug Co., Shreveport, Louisiana.

"Gentlemen: I have advised your Mr. McClure a number of times, that the Rochester Root Beer Dispenser is unsatisfactory, and not as represented to me.

"I ask that you advise me what disposition you wish me to make of same.

"Yours very truly,

"R. A. Ives."

The plaintiff immediately acknowledged receipt of this communication, and assured the defendant that the matter would be taken up with the manufacturer of the articles sold.

On or about the 1st of October thereafter, Mr. Garrett, accompanied by an expert service man from the factory in Rochester, called at defendant's place of business to determine what the trouble was, if any existed. The defendant refused to be a party to the examination, stating, in effect, that he was not interested, and did not want that root beer barrel or any other. The effort to locate the trouble was abandoned, and on October 6, 1926, the plaintiff wrote the defendant, in part, as follows:

"Inasmuch as the suppliers of this merchandise, The J. Hungerford Smith Company of Rochester, N. Y., took the trouble to send two representatives to your place of business to adjust this matter with you, and their report is that you would not let them inspect the Dispenser of which you complain, stating to them that it was in good order but did not draw the Root Beer to suit you, we are reluctantly compelled to believe what we have suspected for some time, that you have no just cause for complaint and are simply trying to back out of your purchase."

The counsel for the defendant contends that the contract of sale should be rescinded because the warranties and guaranties were not fulfilled in two particulars: First, that the drink produced by the equipment was no good; and, second, that the equipment in producing the drink would not yield the profits guaranteed.

We are of the opinion that there was no special warranty or guaranty that the drink was either good or could be produced at a certain price. The contract of sale is in writing, and neither the appealing qualities of the drink, nor the cost

of production thereof, is mentioned in the instrument. The contract contains the following clause:

"No agreement affecting this order shall be binding unless written thereon."

The alleged warranties relied on by the defendant are founded on certain statements made by Mr. Garrett and Mr. McClure that the drink was delicious and desirable, and upon the following excerpt from the advertising matter published by the manufacturer of the articles sold:

"This offer (referring to Offer 13 the one herein purchased) shows a profit of $695.25 or 211% on the investment. The cost per service is $.01-3/5."

The statements by the agents of plaintiff that the drink which could be produced by the equipment was delicious or desirable were merely sales talk, and cannot be construed as a binding oral warranty ingrafted on the written contract.

"As a general rule a contemporaneous oral warranty cannot be ingrafted on a written contract or bill of sale which on its face purports to evidence the entire agreement of the parties, irrespective of whether it is silent on the matter of warranties or not." R. C. L. vol. 23, sec. 224.

The language used in the statement in the advertising matter, above quoted, cannot be reasonably construed to guarantee the profit referred to, and, even if it could so be construed, it is in no sense a part of the written contract herein sued on, and cannot be so considered.

There exists, however, a general or implied warranty that the equipment was suitable for the purpose for which it was manufactured and sold, and, if the defendant is entitled to any relief, it is that provided by article 2520 of the Civil Code:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."

But, in order for the defendant to avail himself of such relief, he must first offer to place the plaintiff in the same position in which he was before the sale; and he must establish that a latent defect existed in the equipment which rendered it unfit for the purpose for which it was intended, and that such defect existed at the time of the sale.

The defendant has not only failed to show that a defect existed at the time of sale which rendered the equipment useless for the purpose for which it was purchased, but by his conduct in refusing to permit the demonstration of the equipment he has prevented the plaintiff from ascertaining whether a defect existed. We cannot conclude, because some half dozen persons did not like the drink as prepared by the defendant, that the equipment was so defective that it was useless for the purpose for which it was intended. Evidently there was a leak in the gas line or carbonator, which accounts for the excessive use of gas, but the testimony shows that such a leak was to be expected at any time, and could be easily and readily located and stopped.

The defendant has not offered to restore the status quo, and could not have executed the offer if he had made it. He has used the equipment for a whole season and consumed a considerable portion of the root beer syrup purchased. We think the defendant justified in using the equipment and the goods for only such time as was necessary to discover the defect complained of, which, from the date of delivery, could not have reasonably exceeded two weeks. If he, after such time had elapsed, had pointed out the defects or

vices of the equipment and offered to return the goods, we are of the opinion that he would be entitled to have the sale rescinded, provided the defects were of such nature as to render the articles unfit for the purpose for which they were purchased, but the continued use of the articles sold throughout the root beer drinking season bars him from such recovery.

"Where the article is one which must be used before its quality can be ascertained, this not being apparent from examination, it is the right of the buyer to make use of the property or such portion thereof as may be actually necessary to determine the quality, and such use does not affect the right to reject for failure to comply with the contract in that respect. On the other hand, if, after knowledge of the breach of warranty as to quality, the buyer continues to use and consume the goods received by him, but not in order to make a proper test as to quality, he waives his right to rescind and return the amount unconsumed." R. C. L. vol. 24, Sales, sec. 575.

The defendant has not sustained the burden resting upon him of establishing the existence of a defect at the time of the sale, which would justify the court in rescinding the contract, and it is impossible for the defendant to restore the status quo. The defendant has likewise failed to establish a basis for judgment for a diminution of the price.

It is therefore ordered, adjudged, and decreed that the judgment of the district court, except in so far as it rejects the defendant's reconventional demand, be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against the defendant in the sum of $346, with legal interest from judicial demand. The judgment of the district court rejecting the defendant's reconventional demand is affirmed, the defendant to pay all costs.