**SCOTT v. BOYLSTON.**

**No. 5551.**

Court of Appeal of Louisiana. Second Circuit.

Oct. 30, 1937.

Rehearing Denied Dec. 3, 1937.

Dickson & Denny, of Shreveport, for appellant.

James A. Horton, of Coushatta, for appellee.

TALIAFERRO, Judge.

On April 29, 1935, plaintiff sold to defendant a type E–36 Westinghouse light plant and to represent the deferred part of the price defendant executed his note for $318, payable in installments over a period of twelve months, secured by chattel mortgage. The first installment was for $95.25. It was due June 1, 1935, for which defendant gave a postdated check. It was dishonored on presentation to the bank on which it was drawn, and was not thereafter paid. However, payments on the note were made by defendant in the months of June, July, August, September, October, and December, 1935, and in May, 1936, aggregating $184.95. These were made after constant and numerous demands by letters and otherwise. Defendant then purchased another light plant, discarded the older one, and refused to make other payments. This suit to recover the balance due on the note and to enforce the chattel mortgage and vendor's lien was then instituted.

The demand is resisted on the following grounds: That the plant was "incompetent" for the purpose for which sold; never gave satisfaction and would not produce sufficient lights for the purpose for which it was sold; and that it was afflicted with latent defects.

This defense was sustained and plaintiff's suit dismissed. He prosecutes this appeal.

The record is barren of any evidence disclosing the purpose for which defendant purchased the plant or the representations made by plaintiff or his agent touching the

plant's ability to give specific service. It was used for a year to generate electricity to refrigerate a meat counter and to provide lights in defendant's store building. Defendant's mechanic, who serviced the plant, testified that he put in new rings, one piston and one rocker arm while it was used by defendant, and that the motor consumed entirely too much oil. The date of these replacements is not shown. Other witnesses testified that the motor would often stop running and was difficult to start. It first failed to function perfectly some thirty days after being installed. Defendant made complaints to plaintiff of the motor's failure to operate satisfactorily. A service man would be sent down to remedy the trouble and start the motor. This mechanic found nothing of a serious nature wrong with the motor. He did find that the use of coal oil as fuel had caused the valves to carbon and "gum up," and stated that the kerosene would "blow" by the rings, dilute the oil, and this would flood the rings, resulting in the impairment of the motor's functioning in the respects complained of. This mechanic stated that this motor was designed to use gasoline exclusively as fuel, and that defendant was so advised when he purchased the plant. Defendant did not contradict this service man's testimony, but admitted that he did use a mixture of gasoline and kerosené to operate the motor.

█ It is common knowledge that a complicated machinery, regardless of the fine quality of material used therein and the skillful workmanship employed to perfect it, must be used and operated in the way and manner for which it was designed in order to realize satisfactory service from it. No machinery will operate indefinitely without competent attention. Breakdowns in operation will occur earlier and more frequently if incompetently operated. In the present case the testimony bearing upon the motor's operations is quite brief; but we have little difficulty in arriving at the conclusion that to the use of the coal oil may be ascribed the cause of the motor's lack of proper functioning. It did run efficiently for thirty days or more. The testimony fails to convince us that this plant was affected with defects of a redhibitory character when purchased by defendant. He only ceased using it after purchasing another plant and informed plaintiff's representative that he would not surrender it to him or pay the balance due on its price.

█ There is an additional reason why defendant should be condemned to pay the balance due on the price of the plant, even though it be conceded that the defects complained of were of a redhibitory nature and existed at the time of sale. He used the plant regularly for over twelve months and during this period made substantial payments on the purchase price note. It seems passing strange to us, if not unreasonable, that these payments would have been made on a machine which was giving the inefficient service now accredited to it by defendant. If it failed to function to the extent now charged against it, defendant should have ceased its use and tendered it back to plaintiff. His failure in these respects, coupled with the making of payments over so long a time, bars the defense now urged. Fairbanks, Morse & Company v. Boney, 156 La. 729, 101 So. 122; Goode-Cage Drug Company v. Ives, 16 La.App. 383, 133 So. 813.

The well-recognized legal principle so clearly expressed in the syllabus of Champion Shoe Company v. Antonio Culmone, 1 La.App. 484, operates as a perfect bar to defendant's prayer for relief, even though the facts of the case were with him; and these, we have found, do not support his contention. The syllabus in the case mentioned reads as follows: "When a purchaser of machinery has used it for more than a year before offering to return it to the seller, and has paid several of the notes furnished by him for the purchase price with full knowledge of the defects of the machinery, he must be held to have accepted the machinery, and is therefore bound to pay for it." ·

For the reasons herein assigned, the judgment appealed from is annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed that plaintiff, Rupert R. Scott, do have and recover of defendant, W. H. Boylston, judgment for $318, with 8 per cent. per annum interest from June 1, 1935, until paid, plus 10 per cent. thereof as attorney's fees, less the following credits: June 11, 1935, $31.25; July 10, 1935, $15; August 26, 1935, $20; August 28, 1935, $10; September 26, 1935, $10; October 17, 1935, $10; October 25, 1935, $39.50; December 31, 1935, $16.40; May 18, 1936, $32.80; and costs of suit. Plaintiff's chattel mortgage and vendor's lien on the plant herein described are hereby recognized, and said plant is ordered seized and sold to pay and satisfy this judgment.