**TWIN CITY MOTOR CO., Inc., v. PETTIT et al.**

No. 5560.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

Oliver & Digby, of Monroe, for appellant.

Bernstein, Clark & Thompson, of Monroe, for appellees.

**TALIAFERRO, Judge.**

Plaintiff proceeded via ordinaria to foreclose a mortgage and vendor's lien given by defendants, Weldon M. Pettit, Jr., and L. B. Pettit, to secure payment of the purchase price note, with interest and attorney's fee, of a sale to them of a used Plymouth sedan. The note is for $412.20, including carrying charges, and is payable in twelve monthly installments of $34.35 each, beginning April 2, 1936. The three installments first maturing were promptly paid. The sale was in reality made to Weldon M. Pettit, Jr. L. B. Pettit joined in the mortgage and act of sale as an accommodation to him, and signed the note as an inducement to plaintiff to make the sale without any down cash payment.

Defendants seek to escape liability on the note because of alleged redhibitory vices in the car when purchased. They aver that the car's condition was so defective and imperfect as to be absolutely useless for the purposes for which acquired, and that had these (latent) vices been known to them it would not have been bought. The specific vices and defects alleged upon are: Excessive consumption of oil and gas; and, while operating the car, replacing of broken axle, ignition switch, spark plugs and brake-drums, relining brakes; repairing transmission, drag link and generator. They further aver: " * * * That the reason that car is useless is that the cylinders of said car need reboring and overhauling, and that a new and complete transmission is needed in said car, and that the connection rods are burned out and need replacing, and a new and complete engine is needed."

It is also charged that to deceive and to falsely represent the mileage the car had previously been driven, plaintiff manipulated its speedometer, which fact, if it had been known to defendants, would have influenced them against making the purchase.

For all of said reasons and causes defendants pray that the sale of the car be rescinded in toto and that they have judgment against plaintiff in reconvention, absolving them from any liability on the note sued on, and for judgment for the amounts paid thereon.

From judgment for the defendants, as by them prayed for, plaintiff prosecutes this appeal.

Appellees move to dismiss the appeal on these grounds: (1) That the record was lodged here after the return day; and (2) that the appeal bond is defective in that surety thereon is not justified as required by law.

■ Since the motion to dismiss was filed, appellant filed in this court affidavits of the principal and surety on the appeal bond in the form required by sections 2 and 4 of Act No. 112 of 1916. This is sufficient to the efficacy of the bond and to maintain the appeal.

Judgment was signed in this case and the order of appeal entered on January 6, 1937. The return day was fixed for February 15th. Suspensive appeal bond was approved by the clerk of court and filed January 15th. The deposit fee of $5 was received by the clerk of this court on the 6th day of July. The record arrived and was filed on July 19th.

Appellant, in written reply to the motion to dismiss, says: "Respondent shows that it did all within its power to discharge every duty and obligation in order to properly perfect and preserve the appeal to this court, and that respondent believed that the appeal had been properly lodged before the return day until the attorney representing respondent consulted the Clerk of this court during its last regular session of court in Monroe and thereby ascertained that the transcript had not been submitted by the Clerk of the District Court to the Clerk of the Court of Appeal. Respondent further shows that upon ascertaining said facts it immediately requested the Clerk of the District Court to transmit said record to the Clerk of the Court of Appeal that it might be regularly filed herein."

■ In oral argument, appellant's counsel stated that the reason the transcript was not promptly filed here was due to the fact that the clerk of the district court had overlooked the filing of the appeal bond. The truth of the facts alleged and reasons assigned for the tardy filing of the record here are not denied by appellee's counsel, and will be accepted by us as true for the purpose of disposing of the motion.

■ It is not the duty of an appellant to personally see to it that the record is filed in a Court of Appeal before the expiration of the return day or within three days thereafter. That duty attaches to the clerk of the trial court, who is custodian of the original papers making up the record. His failure of duty in this respect for any reason is not imputable to the appellant. This is definitely held in the case of Stockbridge v. Martin, 162 La. 601, 110 So. 828. The

syllabus in that case anent this question reads: "Where appellant in tax sale annulment suit directed district court clerk to transmit transcript to Court of Appeal within return day, clerk's omission to so transmit for two years held not ascribable to appellant to cause appeal's dismissal, appellant having no legal remedy to force clerk to transmit record before expiration of return day."

In effect, the failure of the clerk of court to file the record in the Court of Appeal on or before the return day, or within three days thereafter, automatically extends the return day until the record is actually filed.

The filing fee due by appellant need not be paid to the clerk of this Court of Appeal in advance of the arrival of the record, but must be paid as a condition precedent to the filing of the record. Rule 3; see Danna v. Yazoo & Mississippi Valley Railroad Company, La.App., 154 So. 365.

And in the present case, the filing fee having been deposited prior to lodging the record here, we deem it to have been timely paid.

Appellee cites and relies upon Gazzo v. Bisso Ferry Company, Inc., 174 So. 132, decided by the Orleans Court of Appeal. That case does sustain appellee's position, but it is diametrically opposed to the Stockbridge Case.

## On the Merits.

The notarial act of sale of the automobile contains this stipulation, viz.: "The mortgagor hereby waives any and all warranties, expressed or implied."

Employing this waiver as a basis, plaintiff interposed a plea of estoppel by deed and contract against defendants. The plea was overruled. It is urged here. We abstain from passing on it for the reason that we have reached the conclusion that the case is with plaintiff on the merits.

The car was purchased by Weldon M. Pettit in which to carry United States mail. The mail route covered some thirteen miles, and was made twice daily. When purchased, the car was two years old and had been driven some 27,000 miles. The charge that the speedometer had been tampered with has not been proven; in fact, no effort was made to prove it.

It was discovered by defendants two days after the sale that the car's oil consumption was excessive. Weldon M. Pettit drove it to plaintiff's place of business in the city of Monroe three days thereafter and informed Mr. L. P. Landry, its president and general manager, of this fact and requested him to make such repairs to the engine as would remedy this expensive defect. Landry was unwilling to do so and then stand the expense, but he did tell Mr. Pettit that if he would make the repairs at his own expense, he would be given credit for the amount on the last of the installments due on the note. It was estimated that the repair work and necessary parts would amount to approximately $40. Pettit declined to accept this proposition for the reason, assigned by him, that he was not then financially able to pay for the work. He made no further complaint to plaintiff of the car's deficiencies, but continued to use it daily, except Sundays, in carrying the mail, until he lost the job as carrier. This was about July 7th. On that date he returned the car to defendant and informed its president, he says, that he would make no further payments thereon because of its defective condition, and demanded a refund of the amounts he had paid. Mr. Landry testified that Pettit told him then that he was unable to pay more on the note because he had lost his job.

After the car had been used some thirty days, the rear axle broke. Its condition when the car was purchased is not known. It cannot be assumed that it was not in good condition at the time of the sale. Thereafter, the drag link became disengaged; a brake drum was scored and was replaced by a new one. All of these mechanical troubles, as well as the others alleged upon by defendants, are not to be unexpected in a car as old and which had traveled as much as this Plymouth had. It is an experience common to all car operators that such failures in the mechanical set-up of an old automobile will develop from time to time. The longer it is used, the more often such "breakdowns" will occur. And it cannot truly be said that because of such mechanical troubles an automobile becomes useless and wholly unsuited for the purposes for which purchased. In the present case, that allegation is disproven by the fact that the car was continuously used for four and one-half months, during which time it traveled at least 3,000 miles with the mail, and doubtless was driven some on pleasure trips. We do not think the above-enumerated defects in the car can be classed as being of a redhibitory character. If

they all existed when the car was purchased, the aggregate might be so classed, but where they occur at different times over a period of several months in an old used car, we do not think so.

The testimony does not convince us that the car's mechanical condition was misrepresented. It functioned as well as a car of the kind and character could be expected to function. The excessive consumption of oil made its operation unduly expensive. It is not questioned that this defect could have been remedied at an expense of $40. Plaintiff agreed to stand this expense and allow it as a credit on the note. Its reason for not bearing the immediate expense was because defendants had not paid any part of the price of the car in cash. It was sold entirely on credit. In view of all the facts and circumstances, we are not prepared to say that plaintiff's position was not reasonable.

In Goode-Cage Drug Company v. Ives, 16 La.App. 383, 133 So. 813, 815, in which redhibitory vices in the goods sold were advanced as a bar to recovery of the price, this court said: "We think the defendant justified in using the equipment and the goods for only such time as was necessary to discover the defect complained of, which, from the date of delivery, could not have reasonably exceeded two weeks. If he, after such time had elapsed, had pointed out the defects or vices of the equipment and offered to return the goods, we are of the opinion that he would be entitled to have the sale rescinded, provided the defects were of such nature as to render the articles unfit for the purpose for which they were purchased, but the continued use of the articles sold throughout the root beer drinking season bars him from such recovery."

The general rule applicable to such cases, as laid down in Ruling Case Law, volume 24, Sales, paragraph 575, is quoted with approval.

In Fee v. Sentell, 52 La.Ann. 1957, 1964, 28 So. 279, 282, which involved second hand machinery, it is said: "We will not fall into the error of supposing that a second-hand machine can do the work of a new one, but it must be fit to do the work the contract shows was intended. After its acceptance by the vendee, who knows its condition, as complete and satisfactory, he is no longer in a position to urge objection. We think that, as relates to the bulk or principal part of the machinery, defendants must be held to have accepted the machinery, and to owe the price. He made more than one million and a quarter pounds of sugar with it, valued at about $55,000 gross, and is, therefore, without ground to complain of that part which held out during the grinding season."

In the very recent case of Scott v. Boylston, 177 So. 812 decided by this court, we said: "He used the plant regularly for over twelve months and during this period made substantial payments on the purchase price note. It seems passing strange to us, if not unreasonable, that these payments would have been made on a machine which was giving the inefficient service now accredited to it by defendant. If it failed to function to the extent now charged against it, defendant should have ceased its use and tendered it back to plaintiff. His failure in these respects, coupled with the making of payments over so long a time, bars the defense now urged." See, also, Fairbanks, Morse & Co. v. Boney, 156 La. 729, 101 So. 122.

It will be observed from this line of decisions that even if redhibitory vices exist at the time of sale, the purchaser may, by his own conduct, bar himself from raising the issue. He has not the right, as a rule, to continuously use the defective chattel for the purpose acquired, make payments on the price, and then turn it back to the seller and escape further liability on the price, after it has in a substantial measure served such purposes.

We do not think the defenses to the suit are sustained by the evidence. We do think, however, that the car's price should be reduced $40, the amount necessary to stop its excessive oil consumption. Courts have power to reduce the price when the evidence justifies it. Rev.Civ. Code, art. 2543.

For the reasons herein given, the judgment appealed from is reversed, annulled, and set aside, and it is now ordered, adjudged, and decreed that plaintiff, Twin City Motor Company, Inc., do have and recover judgment against defendants, Weldon M. Pettit, Jr., and L. B. Pettit, in solido, for the sum of $309.15, with 8 per cent. per annum interest on the integral amounts thereof and from dates as follows: $34.35 from July 2, 1936; $34.35 from August 2, 1936; $34.35 from September 2, 1936; $34.35 from October 2, 1936; $34.35 from November 2, 1936; $34.35 from December 2, 1936; $34.35 from January 2, 1937; $34.35 from February 2, 1937; $34.35

818

from March 2, 1937; plus 25 per cent. thereof as attorney's fees, less and excepted from said total principal amount a further credit of $40 as of date February 18, 1936.

It is further ordered, adjudged, and decreed that the mortgage and vendor's lien securing payment of the said purchase price note with interest and attorney's fees be and the same are hereby recognized and rendered executory on the Plymouth sedan affected thereby, which is hereby ordered seized and sold, according to law and the terms of said mortgage, to pay and satisfy this judgment.