[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *West Page 765 
[1] Eneise Breaux and Anita Beall Breaux filed suit on September 16, 1970 against Quality Mobile Homes, Inc. and Winnebago Industries, Inc. seeking a judgment in solido against the defendants rescinding the March 20, 1970 sale of a 1970 Winnebago *West Page 766 
Motor Home on the ground that the vehicle contained redhibitory defects. Quality Mobile Homes filed a third party demand against Winnebago Industries, Inc. Both Quality Mobile Homes and Winnebago filed third party demands against Chrysler Corporation, the alleged manufacturer of the power unit and chassis. The third party demands against Chrysler Corporation were dismissed on motion for summary judgment, and no appeal was taken therefrom.
[2] Winnebago Industries filed an exception of no cause of action to the original petition on the grounds that there was no buyer-seller relationship between plaintiff-appellants and Winnebago. This was referred to the merits.
[3] On January 12, 1973, judgment was rendered rejecting plaintiff-appellants' demands and in favor of both defendants. From this decision, Breaux has appealed. Quality Mobile Homes has also appealed.
[4] The facts as developed at the trial are as follows: Eneise Breaux purchased a Winnebago mobile home from Quality Mobile Homes, Inc. on March 20, 1970 for $11,743.86. When the appellant first picked up the Winnebago, he noticed a click in the valves. Through the next several months, he had various problems with the unit. Three days after the purchase, he noticed it overheating on a trip to Eunice, Louisiana. Approximately three weeks later, on a trip to Lake Charles the alternator bracket broke off and ruined the belt. The appellant's cousin welded the bracket at no charge and Breaux was forced to replace the belt himself.
[5] On May 9, 1970, the appellant, returning home from McComb, Mississippi, noticed that overheating was continuing, and the valves clicked. Finally the engine started missing. After he reached home, Breaux took the unit to Standard Motors, an authorized Chrysler dealer, who replaced the valves under warranty.
[6] On Saturday, the 13th day of June, 1970, Mr. Breaux and his family left for a vacation trip to Illinois. Twenty miles outside of Jackson, Mississippi, the engine broke down again. The unit was towed to a Chrysler dealer in Jackson. The following Thursday night, June 18, 1970, warranty repairs were again completed.
[7] On Friday, June 19, the appellant set out from Jackson for Zion, Illinois. That afternoon the fuel pump began pouring gas into the exhaust manifold and underneath the undercarriage. Afraid of a fire, appellant got his family out of the vehicle and waited for the arrival of a state trooper. The unit was then towed to a Dodge dealer in Mattoon, Illinois. Once again warranty repairs were performed.
[8] Appellant finally reached Zion, Illinois, and from there proceeded to Battle Creek and Detroit, Michigan. As appellant was returning home, the vehicle broke down again, this time in Elizabethtown, Kentucky. It was towed into the local Dodge dealer and remained there for four weeks being repaired. The Breaux family returned to Louisiana in a rental car.
[9] After being home for approximately three weeks, Mr. Breaux drove the rental car back to Kentucky, picked up the mobile home and returned home to Carville, Louisiana. Coming back, Mr. Breaux once again noticed the valves clicking. The day after returning to Carville the unit was again taken to Standard Motors for repairs. Again repairs were attempted taking approximately one week.
[10] In September of 1970, Breaux filed the instant suit asking for a rescission of the sale. At that time the vehicle had been driven approximately 6300 miles. On February 9, 1971, the Winnebago again gave Breaux trouble. This time the cause was a missing nut securing the coil wire.
[11] In March or April of 1971, the fuel pump began leaking. The appellant called to have it repaired, but was advised that this repair was not now under warranty. As a result, he repaired it himself.
[12] In August of 1971, a rumble developed in the rear end. This necessitated the *West Page 767 
replacement of the rear axle bearings. There were several minor problems occurring at that time including a leaking radiator. These problems were not repaired because appellant mistakenly thought the rear end was still under warranty while the rest was not. However, he was charged for the rear end work.
[13] In November of 1971, the wheel bearing went out again this time leaving appellant and his family stranded outside Livonia, Louisiana. After spending the night parked off the Airline Highway, appellant caught a ride to Baton Rouge, picked up the necessary parts and made the repairs himself since he had been charged for the previous work. This occurrence took place approximately two weeks prior to trial and is thus the last recorded occurrence in the record. Additionally the original clicking noise was never stopped.
[14] We are presented first with an exception of no cause of action filed on behalf of Winnebago Industries, Inc. This exception was referred to the merits and was not decided by the trial court. In support of its exception, Winnebago claims that the appellant has no cause of action as against Winnebago, the manufacturer, since no seller-purchaser relationship existed, further contending that this relationship is essential for the purchaser to have an action for rescission or quanti minoris based on redhibitory defects.
[15] In the very recent case of Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80,262 So.2d 377, on remand, 264 So.2d 686 (4th Cir. 1972), the Supreme Court held Mercedes-Benz of North America, Inc. which it classified as the manufacturer, solidarily liable with the retailer, Cookie's Auto Sales, Inc., for price of an automobile and other allowable expenses because of redhibitory vices and defects in the automobile. In holding the manufacturer liable, the Supreme Court held that the manufacturer impliedly warrants its product to be free from redhibitory vices and defects, and there is no necessity of privity for a purchaser to bring an action of rescission against the manufacturer. Thus, Winnebago's exception is without merit.
[16] During the course of trial, the appellants requested orally to amend the prayer of their original petition against Winnebago and Quality Mobile Homes, Inc. to seek judgment primarily against Winnebago Industries, Inc. The trial judge took this under advisement and apparently did not allow the amendment although no reference is made to this in his reasons for judgment. The appellants contend that the trial judge erred in refusing to allow this amendment; however, this refusal was within his discretion under Article 1151 of the Louisiana Code of Civil Procedure.
[17] We now turn to the merits of the instant case. After reviewing the evidence, the trial court rejected the appellant's demand holding that the major faults of the mobile home had been remedied by repairs. The trial court erred in its holding.
[18] Article 2520 of the Louisiana Civil Code provides the rule to be applied in determining a purchaser's right to an avoidance of a sale based on vices and defects in the thing purchased.
[19] "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
[20] The facts outlined above showing the repeated breakdowns and failures of the mobile home during the appellants' ownership thereof leads us to the conclusion that the appellant would never have purchased the mobile home if he had known of the numerous vices and defects which have manifested themselves. Without question this expensive mobile home was what is colloquially known as a "lemon". The testimony of both appellants reveals that the *West Page 768 
breakdowns and failures have become so numerous, and in some cases serious that they are reluctant to take a trip of any distance away from their home for fear of further difficulty. The use of such a mobile home for travel on vacations and other trips is of course its primary purpose, and, if appellants are reluctant to use it as it was intended, then the mobile home has become practically useless to them.
[21] The record reveals that numerous attempts to repair the vehicle have been made by defendants or representatives of Chrysler, the manufacturer of the engine; however, the repairs made have failed to eliminate the breakdowns and failures. The appellants simply have been beseiged by a continuing series of breakdowns and failures which have ranged from simply annoying problems to very dangerous hazards and threats to their own safety. Furthermore, the evidence leads us to the belief that most of the breakdowns complained of including the serious failures of the unit, especially in the motor, fuel pump and rear end, were the result of defects present prior to the sale.
[22] Appellees, both in the trial court and on appeal, have contended that the mobile home was never tendered by appellants to the seller, Quality Mobile Homes, Inc., and that such a tender is a prerequisite to a rescission of the sale. Although we agree with this statement of the law, the evidence reflects that there has in fact been a tender.
[23] The appellants began experiencing problems with the mobile home, especially with the motor, just after the purchase, and many of the breakdowns unfortunately occurred while they were on long trips. For example, there were three major breakdowns on their trip to Illinois. The appellants had no real choice but to allow attempts at repair, always under the impression that the mobile home could be placed in good condition. After numerous attempts at repair, and after additional malfunctioning of other parts of the mobile home, in the summer of 1970 the appellants requested that Quality Mobile Homes, Inc. and Winnebago take the unit back. This offer was evasively shunned. The appellants' attorney then wrote to Winnebago demanding a replacement unit in August of 1970, but again no action was taken. In September of 1970, the appellant had no choice but to file suit. With these facts before us, we must conclude that there was sufficient tender. In order for there to be sufficient tender, it is not necessary that the purchaser physically deliver the object to the seller where the seller has already indicated that it would not be taken back. Alan Randal Company, Inc. v. Quality Oil Company, Inc., 100 So.2d 282 (1st Cir. 1958).
[24] Winnebago next contends that the appellants have waived their right to a rescission because of their use of the mobile home. The question of waiver of a purchaser's right to bring a redhibitory action arises where the purchaser uses the object sold prior to and after tender of the object to the vendor. c. f. Fairbanks, Morse and Company v. Boney, 156 La. 729, 101 So. 122 (1924), Goode-Cage Drug Co. v. Ives, 16 La.App. 383, 133 So. 813 (La.App. 2nd Cir. 1931) Combs v. International Harvester Company,115 So.2d 641 (La.App. 2nd Cir. 1959), Abraham v. Dalworth Machinery Company, 167 So.2d 185 (La.App. 1st Cir. 1964), Leson Chevrolet Company v. Barbier, 173 So.2d 50 (La.App. 4th Cir. 1965). In considering use prior to tender sufficient to constitute a waiver, the jurisprudence is clear that where the defective vehicle is used while repairs are being undertaken by the seller, leading the purchaser to believe that the defects can be corrected by the repairs, such use will not constitute a waiver of the purchaser's action for rescission. Reech v. Coco,223 La. 346, 65 So.2d 790 (1953), Bergeron v. Mid-City Motors, Inc., 162 So.2d 835 (La.App. 1st Cir. 1964), Hebert v. Claude Y. Woolfolk Corporation, 176 So.2d 814 (La.App. 3rd Cir. 1965). *West Page 769 
[25] The record reveals that prior to tendering the mobile home to the defendant-appellees, the appellants allowed repairs to be undertaken in hopes of remedying the defects under the impression that the problems could be corrected by repairs. Actually this is an interpretation most favorable to defendants since several of these repairs were undertaken by Chrysler dealers while the appellants were on vacation hundreds of miles from home, so that as a practical matter they had no choice but to have the repairs attempted. Accordingly their use of the vehicle does not constitute a waiver.
[26] After tendering the mobile home to the vendors, the Breauxs kept the same and have made limited use thereof. It is contended that this use constitutes a waiver of their right to rescind the sale. We hold that it does not. Continued use of a defective object which has been tendered does not necessarily constitute a waiver of the right to rescind the sale. c. f. Woodward-Wight and Co., Ltd. v. Cotonio, 152 So. 336 (La.App. 1934), Kiefer v. Bernie Dumas Buick Company, 210 So.2d 569 (La.App. 4th Cir. 1968), Cleveland v. Chrysler Motors Corp., 259 So.2d 450 (La. App. 4th Cir. 1972). The evidence clearly shows that the plaintiff never intended to relinquish his right to rescind, but made only such use as the practicalities of the situation necessitated. Almost universally mortgages on vehicles are now held by holders in due course. Where a seller has refused tender if a buyer cannot make such limited use of the defective vehicle as his situation requires and the limitations of the object itself allows, the buyer is left no recourse but to forego his action or try to purchase a second vehicle while paying for the first. This latter situation is one that the average buyer is unable to afford. c. f. Brown v. Mid City Motors, Inc., 248 So.2d 27
(La.App. 1st Cir. 1971).
[27] We hold that plaintiffs are entitled to rescind the sale of the Winnebago Mobile Home.
[28] Since plaintiffs have made limited use of the mobile home both prior to and after the tender, the defendants are entitled to some credit for this use. A review of the jurisprudence reveals that there is no established rule for determining the amount of the credit. The appellate courts have merely affirmed the decisions of the trial courts who have made arbitrary assessments. Bergeron v. Mid-City Motors, Inc., 162 So.2d 835
(La.App. 1st Cir. 1964), Kiefer v. Bernie Dumas Buick Co.,210 So.2d 569 (La.App. 4th Cir. 1968). In Gauche v. Ford Motor Company, 226 So.2d 198 (La.App. 4th Cir. 1969) the appellate court made an arbitrary assessment where no credit had been given in the trial court.
[29] The defendants herein introduced proof that Winnebagoes lease for $200.00 per month. However, it has been universally recognized that the credit for use of a defective vehicle should not be in the same amount as that for a non-defective vehicle.
[30] We believe there should be some formula for determining this issue. It appears logical that a defective vehicle will not be used as much as one containing no defects. Therefore a credit based on mileage would appear to be the most equitable method of fixing credit for use. At this time the established rate of mileage set by governmental agencies is twelve cents per mile. The evidence shows that at the time of trial this vehicle had approximately 14,000 miles. Consequently, we credit defendants with $1680.00 for plaintiffs' use of the Winnebago.
[31] In addition to rescission of the sale, appellants ask for damages. Article 2531 of the Louisiana Civil Code provides that,
[32] "The seller who knew not of the vices of the thing, is only bound to restore the price, and to reimburse the expenses occasioned by the sale, as well as those incurred for the preservation of the thing, unless the fruits, which the purchaser has drawn from it, be sufficient to satisfy those expenses." *West Page 770 
[33] The record reveals that the purchase price of the vehicle was $11,743.86. This must be awarded under the above Article subject to the credit for use. Appellants also introduced testimony regarding various other expenses, including a repair bill for $67.18, and a $15.00 towing charge. The repair bill and the towing charge is an expense for the preservation of the thing sold and is allowed.
[34] Additional damages as against the vendor may only be allowed under Civil Code Article 2545 which provides for such if the vendor had knowledge of the defects prior to sale. Although we note that when Breaux purchased the unit, he found a tag on the radiator stating, "Warranty sounds like a woodpecker in right valve", the evidence is insufficient to show that the seller, Quality Mobile Homes, Inc., was aware of the defects.
[35] Here it becomes necessary to distinguish between the actual seller, Quality Mobile Homes, Inc., and the manufacturer, Winnebago Industries, Inc. A close reading of the MediaProduction case, supra, leads us to the conclusion that the Supreme Court held that the manufacturer's implied warranty includes, at least, a warranty against redhibitory defects for which the manufacturer can be held solidarily with the actual vendor. The warranty is not limited to redhibitory vices when proceeding against the manufacturer, so that in particular cases a manufacturer may be held when a vendor may not. c. f. Gordon v. Bates-Crumley Chevrolet Co., 158 So. 223 (La.App. 1935). It is not necessary for us to draw that distinction here since we do find redhibitory defects.
[36] We do find, however, that the manufacturer's liability is greater in the case before us than the actual vendors with reference to damages. A manufacturer is conclusively presumed to have knowledge of defects in the object it produces. George v. Shreveport Cotton Oil Co., 114 La. 498, 38 So. 432 (1905). Therefore, Winnebago is liable for additional damages under Article 2545 of the Civil Code because of knowledge of the defects existing prior to sale is imputed to it, or under the general obligations inherent in its implied warranty. Gordon v. Bates-Crumley Chevrolet Co., supra.
[37] The additional damages proven here are $74.88 for a motel in Jackson, Mississippi, and $131.09 for motel expenses in Elizabethtown, Kentucky. These will be allowed against Winnebago.
[38] The trial judge's decision, therefore, will be reversed, and judgment granted in solido against Quality Mobile Homes, Inc. and Winnebago Industries, Inc., for $11,743.86 plus $67.18 and $15.00 as expenses incurred for preservation of the mobile home, subject to a credit of $1680.00 for use of the vehicle.
[39] Judgment is granted singularly against Winnebago Industries, Inc. for an additional $205.97 representing damages not recoverable against the vendor.
[40] Quality has third partied Winnebago for indemnity in the event the sale is rescinded. We grant Quality indemnity since they are only vicariously responsible for the defects which were obviously present when delivered by the manufacturer. Appalachian Corporation, Inc. v. Brooklyn Cooperage Co., Inc., 151 La. 41, 91 So. 539 (1922).
[41] All cost of this suit is to be paid by Winnebago Industries, Inc.
[42] Reversed and rendered. *West Page 771