## PHILLIP WERLEIN, Limited, v. GLICK.
### No. 4745.

Court of Appeal of Louisiana.
Second Circuit.

May 4, 1934.

Snyder & Sevier, of Tallulah, for appellant.

Richard K. Boney, of Tallulah, for appellee.

TALIAFERRO, Judge.

On November 30, 1929, plaintiff sold and delivered to defendant at his residence in the town of Tallulah, La., a Wurlitzer grand piano for the price of $620, whereon a payment of $75 was then made. The balance of the price was payable in monthly installments, the last of which fell due in August, 1931, according to the terms of the written contract signed by defendant. Payments were made on account of principal and interest until February 29, 1932, when the balance due was $100; thereafter additional payments were made which reduced the balance to $75.-53, for which this suit was filed December 1, 1932.

Defendant resists payment of the amount for which he is sued, and in defense of the

suit pleads: That the piano, when purchased by him, was represented to be a new and unused instrument, in good condition, whereas, to the knowledge of plaintiff's agent, who closed the deal with him and delivered the piano, said piano was an old one, had been used for demonstration and concert purposes, and had been hauled about "from hall to hall" while thus used; that through said false representations he was induced to purchase the instrument; that two months after the purchase of the piano the loud foot pedal dropped off, twelve keys stuck, and keyboard cover stuck and would not close, and this condition continued until a year or more, when plaintiff's repair man fixed the impairments; that said defects were in existence at time the piano was purchased, and were attributable to the fact that the piano was an old used one; that had he known of said vices he would not have purchased it; that he did not know the instrument was an old used one until within the six months preceding filing of this suit; that plaintiff's agent tried to sell same to other persons in Tallulah as a secondhand piano, and at a price much less than it was offered to him. He prays to have the sale of the piano avoided and set aside because of false representations to him by plaintiff's agent and because of the vices and defects therein when he purchased it, and for judgment for the amount he had paid thereon; in the alternative, he prayed that the purchase price of the piano be reduced to $200 and for judgment for the difference between that amount and the total of the payments made by him.

█The lower court, in a written opinion, tersely, yet cogently, discusses the issues and facts of the case. Plaintiff was given judgment for amount sued for, and defendant's demands were rejected. We adopt this opinion, subject to exceptions hereinafter discussed, and, eliminating preliminary résumé of the pleadings, quote it:

"Evidence discloses: Lack of examination of instrument before purchase; only immediate cause of complaint unsatisfactory tone to defendant, who is not a musician. That his brother, a member of the Royal Academy of London, and a professional musician, played on the piano during the first month after its purchase, and, so far as we know, made no complaint. That within two months after its purchase, loud foot pedal dropped off, keyboard could not be closed, at least twenty keys stuck and it simply did not play. All of this must have happened in the latter part of January, 1930, since when defendant has paid, on account of the purchase of that non-playing piano, some $494, which payments and promises to pay extended into the latter part of 1932. This seems rather anomalous than otherwise. Educated intelligent men do not ordinarily pay for musical instruments so defective as the piano in question is described to have been. The anomaly is accentuated by evidence to the effect that the instrument is in excellent condition and performs beautifully now, something over two and a half years after its purchase.

"Our codal provisions are rather specific as to rescission of sales, redhibitory defects, etc., when warranted by the circumstances and conditions incident to or growing out of sales. In my opinion, from the evidence herein, no condition developed or defect showed up in this piano which warranted either rescission of sale or reduction of price. I do not question but that it was offered to others for a less price—why, we do not know—and I do not think it affects this suit. Defendant made a definite contract for the purchase of a specific thing, at a fixed price, on certain conditions, with which he has but partially complied; and he rather candidly leads the court to conclude that the only reason he failed to fully carry out his agreement with the complainant resulted from financial conditions.

"If he ever had legitimate cause for complaint, he should have exercised his legal rights, within the time fixed by law. He did not do so.

"I am therefore of the opinion that the pleas of the defendant for a rescission of sale, etc., are both unwarranted and made too late."

█A purchaser sued for the price may claim à diminution for defects or vices notwithstanding the prescription of the action quanti minoris, Edwards v. Plaquemine Ice Co., 46 La. Ann. 360, 15 So. 61; Pere v. Dalgarn, 3 La. App. 775; and this is true even though the purchaser has continued to use the purchased chattel, Civ. Code, art. 2541; Iberia Cypress Co. v. Von Schoeler, 121 La. 72, 46 So. 105.

█Therefore, if the piano had been so defective when sold as to render it useless and altogether unsuited to its purpose, or its vices were such that its value was diminished, even though more than one year had elapsed since its purchase, defendant, in resisting demand for balance due on the price, would not be barred from such course by the statute of limitation. However, as concluded by the trial judge, the evidence in the case does not sustain to any substantial ex-

tent the contention of defendant. Financial conditions unquestionably caused his default in meeting all installments due on the piano, and not the alleged defects or vices thereof. His own letters of January 21, 1932, February 29, 1932, April 11, 1932, August 6, 1932, all contain reasons for delay in making payments and requests for further indulgences, during which time he was sending in small amounts on the account; and, climaxing all his correspondence on the subject, on October 12, 1932, he sent to plaintiff his twelve postdated checks to cover the balance due by him on the account. These were returned to him because the account was long past due, and to accept the checks would extend it for many months.

The testimony is conclusive that the piano sold to defendant was a new one and had not been used to any extent.

For the reasons assigned, the judgment appealed from is affirmed.