REGAN, Judge.
Plaintiff, Lawrence M. Capella, instituted this suit, via ordinaria, against defendants, Sam and Lawrence Taulli, endeavoring to recover the sum of $948.30, representing the balance due on a Fifty Inch Flatwork Ironer, sold to the defendants, on October 8th, 1947, which was secured by note and chattel mortgage, together with eight percent interest thereon from November 15th, 1947, until paid, plus twenty percent attorney’s fees and recognition of his vendor’s lien and privilege.
Defendants answered admitting the purchase of the ironer, the execution of the note and chattel mortgage and the payment of $300 on account of the purchase price thereof, but denied that they owed plaintiff a balance of $948.30, or any sum whatsoever. Defendants then reconvened and maintained that the sale should be rescinded and declared a nullity on the ground that the ironer was affected by redhibitory vices and defects and prayed for judgment in the amount of $300 and other costs incurred by them amounting to $145.70 or a total of $445.70.
Plaintiff then filed an exception of no cause or right of action to the reconven-tional demand, setting forth that the said action is “prescribed within one year from the date of the sale”, which exception was maintained.
After a trial on the merits a judgment was rendered in favor of defendants dismissing plaintiff’s suit, hence this appeal.
The record reveals that on October 8th, 1947, plaintiff sold defendants a Fifty Inch Flatwork Ironer for the sum of $1248.30, $300 of which was paid in cash and the balance of $948.30 was secured by promissory note and chattel mortgage executed before L. Julian Samuel, Notary Public for the Parish of Jefferson, on October 8th, 1947, said note bearing eight percent interest from maturity, twenty percent attorney’s fees and costs of court, together with vendor’s lien and privilege.
Plaintiff sold the ironer to defendants with the understanding that the costs of freight, drayage and installation were to be borne by the defendants. When the machine arrived at defendants’ business establishment it had a “broken arm and gear”, which occurred in transit. Plaintiff told defendants to have it repaired, and upon receipt of their bill, he would credit that amount to their account. Thereafter the defendants, who had never “seen”, “operated” or “installed” a “machine of this type”, did actually install it. Subsequently plaintiff or one of his employees “padded” the machine and, on several other occasions he sent, at defendants’ request, a mechanic to defendants’ business establishment to “dress” the machine.
Defendants purchased the machine from plaintiff in October, 1947, and when no payments had been made on account thereof in January of 1948, plaintiff requested his attorney to write defendants requesting payment, or a reason why payments were not forthcoming. Several letters were written but no reply was received. Finally, in an effort to avoid litigation a conference was arranged in May of 1948 between plaintiff and defendant, Sam Taulli, and their respective counsel, in the office of defendants’ counsel. The conference revealed, for the first time, defendants’ reason for failing to pay for the machine which, in substance, was that “the heat is not sufficient enough to dry sheets and they have to be passed through machine at least three or four times before they are dry.” This reason, among others, of relative insignificance, is disclosed by a document introduced in evidence showing that the complaints made by defendants at the conference were reduced to writing by defendants’ attorney or his secretary.
As a result of this conference, it was agreed that plaintiff would send Joseph D’Amico, a Steam Engineer, to defendants’ place of business to determine what adjustments were necessary relative to proper installation, and R. G. Stockton, an expert mechanic, to install the machine in accordance with whatever recommendations were made by the Steam Engineer; that if the ironer then operated properly defendants would complete the payments therefor, including the cost of installation, or alterna *273 tively plaintiff would “take” the ironer and pay the cost oí installation.
D’Amico testified that the ironer was not properly installed, but that it was a standard type of machine and would operate properly if installed in conformity with his recommendation.
Stockton testified, by deposition, that he called upon defendants in order to install the machine, but was informed by them that he could not proceed until they ascertained from plaintiff who was to defray the cost thereof. Apparently upon the satisfactory settlement of this impediment, Stockton again called upon defendants, who informed him on this occasion, that they did not desire the machine and that plaintiff could remove it from their place of business.
This testimony is disputed by defendants, who state that they wanted Stockton to make the installation on a “weekend” at which time the work would not impede the progress of their business, inasmuch as the installation required at least a day’s work.
When plaintiff instituted this suit, defendants, in their answer, and, in our opinion, for the first time, which was seventeen months after the sale, set up the defense and instituted that before purchasing the ironer, plaintiff represented to them that this machine would turn out 70 to 100 finished huck towels or 70 to 100 finished sheets per hour, but when its performance was not in keeping with plaintiff’s representation, they abandoned the machine and placed it in the rear of their business establishment.
Plaintiff testified that he did not make any warranty to defendants with respect to the number of towels or sheets that the ironer could handle per hour; that he realized there were so many factors to be considered, such as the capacity of the operator, dampness of the material, heat of the machine and thickness of the towel or sheet, that it would be impossible to- make such a representation; and that the machine was standard equipment, well recognized in the trade, and capable of performing as satisfactorily as any comparable fifty inch machine.
Defendants, endeavoring to substantiate their contention, produced two experts, the essence of their testimony being that if the machine was properly installed “it would turn out about thirty sheets per hour.”
Defendants, in the final analysis, maintain that they may avoid this sale on account of vices and defects in the ironer which have rendered it useless, or its use so inconvenient and imperfect that it must be presumed that the buyers would not have purchased it had they known of the vice.
Even though the right of the vendee to bring the action of redhibition is prescribed one year after the sale, he may nevertheless use the vice as a valid defense in an action by the vendor for payment of the purchase price. However, the burden of proof is on the vendee to establish that the vice existed before the sale to him.
We are of the opinion that the evidence preponderates to the effect that the defendants have failed to carry the burden of proof necessary to establish that a vice existed in this ironer before the sale to them. This conviction is fortified by defendants’ failure or refusal to permit plaintiff’s expert to properly install the ironer in conformity with an agreement which was confected as a result of the conference in the office of defendants’ attorney.
For the reasons assigned the judgment appealed from is annulled, avoided and reversed and it is now ordered that there-be judgment herein in favor of the plaintiff, Lawrence M. Capella, and against the defendants, Sam and Lawrence Taulli, jointly and in solido, in the sum of $948.30, together with interest at the rate of eight percent per annum from November 15th, 1947, until paid, plus twenty percent attorney’s fees, with recognition of plaintiff’s special lien and privilege and for all costs.
Reversed.