HOOD, Judge.
Plaintiffs, Mrs. Marjorie Houssiere O’Malley and her husband John F. O’Mal-ley, instituted this suit against defendant, Elroy Jones, for the recission of a sale of a house and lot in Lafayette Parish which Mrs. O’Malley had purchased from the defendant for $19,000.00 on May 19, 1958. After issue was joined the case was tried and judgment was rendered by the trial court in favor of defendant, rejecting plaintiffs’ demands and dismissing the suit. Plaintiffs have appealed from that judgment.
The trial judge in his reasons for judgment has concisely stated the pertinent facts and in our opinion he has correctly analyzed and applied the law to those facts. We, therefore, quote the major portion of his reasons for judgment and adopt them as our own:
“Briefly stated, the facts show that defendant built the home in question with substantial completion thereof approximately October 15, 1957. It was not airconditioned, and defendant showed the home to prospective purchasers until it was sold to plaintiffs. During this time the flooring inside the house remained in good condition and there was no excessive moisture noted under the structure.
“After plaintiffs purchased the residence, they caused a 2^4 ton airconditioning unit to be installed by Butcher Bros., Inc., a *446 Lafayette firm engaged in this business. This was done and the unit put into operation approximately June 15, 1958, not quite thirty days after the sale. On about August 15, 1958, the purchasers noted that some of the floors inside the house were buckling, and defendant was notified. At this time, examination revealed the subflooring and joists beneath the house were wet, and the ground extremely damp. The defendant checked all pipes and joints, finding no leaks, but did not check the airconditioner. At approximately the same time, plaintiffs noticed a drip from the airconditioning unit onto the floor in the hall closet, and called Mr. Butcher. An examination of the unit revealed that one of the condensate drain lines was partially clogged, causing the drip pan to overflow, with water running over and down the pipes and sides of the unit, to the floor below.
“This situation was remedied, the unit remained in operation and the floor buckling continued. Between August 15, 1958, and Labor Day, plaintiffs were away for a few days, and the unit was cut off. It was noted by Mr. Jones during this time that the flooring dried out, then when the unit was placed in operation again, the excessive moisture reappeared.
“The Court might have concluded that the leakage from the airconditioner caused the damage in question, but for the established fact that the buckling continued after the leak was stopped, in fact, throughout the year of 1959.
“The construction of this home is of brick veneer; the flooring being oak flooring, over asphalt felt, with centermatch sub-flooring. In the kitchen area, instead of oak flooring a resilient tile was used, over asphalt felt and laminated plywood. Every room in the house has buckled or warped floors, and the moisture content in the kitchen floor was so great that the plywood (interior type), has become unglued and delaminated.
“Defendant contends that the house is not defective, that the damage was caused by the leak in the airconditioning unit at first, and has been continued by condensation beneath the house when the airconditioner is turned on. Plaintiffs maintain that the damage was due entirely to the fact that the ventilation under the structure was inadequate and not up to standards required for this area, hence they demand recission of the sale.
“As to adequacy of the ventilation, defendant himself has been engaged in building houses for some ten years in this area, and used the same type of design for air space beneath other homes, some of which are airconditioned and some of which are not, with no adverse results. Mr. Jones, Mr. Roger his chief carpenter, and a Mr. Spearifico of Lafayette Lumber Company, all stated that they could not explain the excessive moisture under the house except by a leak in a pipe or the airconditioner. It was their opinion that condensation from the underside of the house could not penetrate the centermatch and asphalt felt to reach the upper flooring and cause it to warp or buckle.
“Mr. Murphy, an architect of Crowley, Louisiana, called by plaintiffs, testified that the excessive ground moisture from poor drainage under the house, had penetrated the sub-floor and felt by seepage, due to the airconditioning and dry humidity inside the house, and that in his opinion the lack of proper ventilation under the house caused the condensation. It is his testimony that increasing the ventilation air spaces around the sides of the building would remedy the situation, and that this defect in construction is responsible for the entire damage.
“In a written report made by him on April 1, 1959, this witness states without equivocation that the excessive ground; moisture under the house which evaporates and is pulled from the ground by the low moisture content inside the building, (reduced in summer by airconditioning and in winter by heating), the transfer being from wet air to dry air. He also states in this report that the house has normal recom *447 mended ventilation which is insufficient to remove the amount of moisture present, and concludes his report with the following:
“ ‘In our opinion, the problems which exist in this residence a/re not the result of the construction of the building, hut rather or due to moisture content of the soil.
“ ‘We would recommend the reworking of surface contours to permit adequate drainage of surface water as rapidly as possible and installation of a sub-surface drainage system to remove and prevent penetration of water to the underside of the house.’ (Emphasis by the Court)”
Thus, it appears that the witness’s testimony contradicts his formal report in writing to some degree.
“On the other hand, Mr. O’Rourke, an architect and engineer of Lafayette, called by defendant, testified that in his opinion the reduction of the temperature inside the house by installation and operation of the unit, caused the subfloor to be cooler than the outside air, with condensation resulting on the sub-floor, and consequent seepage and saturation of and through the felt, by means of nail holes and the porosity of the material, which reached the top flooring and caused the damage. He further testified that the house was adequately ventilated for this area, that it was within 3.4% of the amount of ventilation considered standard, and that it ‘is reasonably close enough to be considered as adequate.’ (Tr. 30) He did not believe the drip from the aircondi-tioner caused the damage (Tr. 36). Mr. O’Rourke was also of the opinion that more ventilation space under the house would not remedy the situation, but that in such cases it is necessary to stop the transfer of heat by insulation, and covering the floor joists and crawl spaces under the building with venyl plastic.
“It is significant that the excessive moisture on the sub-flooring made its appearance only when the airconditioner was in operation. This fact is established by the testimony of the Orkin people, who saw it before the unit was installed or put into operation; by Mr. Jones who turned it off while plaintiffs were away to permit the floors to dry; by Mr. O’Rourke who saw it during the winter months as well as while the unit operated; in fact, by almost all of the witnesses who examined the underside of the house at times when the unit was not operating.
“It is the conclusion of the Court that the house was of sound construction and that the air spaces for ventilation were reasonably adequate. It was sold without aircon-ditioning, and if the unit had never been installed, the damage would never have occurred. At no point in the evidence is it disclosed that Mr. or Mrs. O’Malley spoke to defendant relative to the installation of airconditioning, nor was he consulted by Butcher Bros., Inc., when the work was done.
“Article 2520 of the Revised Civil Code defines the redhibitory vice as a defect in the thing sold, ‘which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.’
“The question to be decided then resolves itself into whether or not the purchaser of such a home, newly constructed, can expect it to be in readiness for the installation of airconditioning equipment, without additional insulation or other preparation. It is clear that anyone who buys a home in these times, particularly one of this type, would expect to eventually aircondition the residence. All duct work necessary had been supplied as part of the central heating system, and the addition of airconditioning to such installations is common practice, certainly one of the uses for which a home of this type is intended.
“Mr. Butcher testified that when he went to the home in August to work on the unit, he did not inspect the underside of the *448 house, and that he made no investigation of soil conditions or insulation around the house or under it before it was installed. (Tr. 84) His only investigation was to determine the size of the load. Again, on direct examination he stated that when he determines the capacity of the house, he considers the way the house faces, window area, the amount of insulation in the ceiling, ceiling height, and generally, anything bearing upon the question of how much heat the house would accumulate. Why an investigation of insulation under the home would not be pertinent is not explained.
“Defendant’s architect, Mr. O’Rourke, indicates that when airconditioning is installed, such conditions should be studied and the person installing the equipment should provide accordingly. (Tr. 47)
“The burden of proof of the redhibitory vice rests upon the plaintiffs as in every civil case, such proof to be by a preponderance of the evidence. With specific reference to the redhibitory action, our Code provides:
“ ‘Art. 2530. The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days immediately following the sale, it is presumed to have existed before the sale.’
“The record in this case shows that the house in question evidenced no^ defect for a period of almost one year after its construction, prior to the sale to plaintiff, and for some three weeks (months) afterward. Mr. Murphy, in his written report, and Mr. O’Rourke in his testimony, state that the construction of the house was not the cause of the floor buckling. The remaining witnesses also state that the ventilation of the sub-flooring was normal and adequate for the area, the construction and materials used were standard, these men all being experienced builders.
“As disappointing as it must have been for Mr. and Mrs. O’Malley when their floors began to buckle, the Court does not feel that the record in this case warrants a judgment against this defendant. When the airconditioner was installed, the condition of the thing sold was, in a sense, altered. It was then incumbent upon the person responsible for the installation to study the problem and to anticipate and meet any unwanted side effects. Clearly if defendant Jones had installed this unit, or if the house had been warranted by him as being insulated for airconditioning, he would be liable. This is not the case here. The Court is unable to determine from the evidence presented where the fault lies, but it is clear beyond question in my opinion that there was no trouble until it was airconditioned by plaintiffs themselves.
“Plaintiffs, having failed to carry the burden of proof, must suffer the dismissal of their suit at their costs.”
Plaintiffs filed a formal motion in this court praying that the case be remanded for the introduction of additional evidence which they contend tends to show that the defendant expressly or impliedly warranted the house as being adequate for the installation of air conditioning, and that defendant knew that plaintiffs were contemplating such an installation at the time the house was sold. As a basis for that motion, plaintiffs allege that since the trial they have discovered a letter, written by defendant to plaintiff prior to the sale, indicating that the defendant did warrant the property for that purpose and that he had knowledge of plaintiffs’ plans to air-condition the house. A copy of this letter was attached to the motion to remand.
In this letter, which is dated May 14, 1958, defendant offers to sell the property to plaintiffs for the net price of $19,000.00, and he sets out some of the conditions of the proposed sale; at the bottom of the letter is the following postscript:
“The bid on 3 ton Air Conditioning, G.E. by Butcher Air Conditioning Co. is $1100.00 (Eleven Hundred Dollars).
*449 “The Bid of Breaux Bros. Co., Day and Nite Equipment, is given you herewith.”
The trial judge in his written reasons for judgment stated that “At no point in the evidence is it disclosed that Mr. or Mrs. O’Malley spoke to defendant relative to the installation of air conditioning, nor was he consulted by Butcher Bros., Inc., when the work was done.” The evidence introduced at the trial did not disclose any such facts, so the statement to that effect by the trial judge is correct. The letter which plaintiffs seek to introduce in evidence, however, may serve to establish that prior to the sale the defendant did talk to Mr. O’Malley about the installation of air conditioning in the house, although there is nothing in the letter, or in any evidence which plaintiffs have offered to produce, which indicates that the defendant was consulted by Butcher Bros., Inc., when the work was done.
We agree with the trial court that “Anyone who buys a home in these times, particularly one of this type, would expect to air-condition the residence,” and we assume that defendant in this case anticipated that plaintiffs sooner or later would install central air conditioning in the house which they purchased from him. For that reason we conclude that defendant impliedly warranted the house as being constructed in such a manner that it would be suitable for use after air conditioning had been installed. The letter which plaintiffs seek to introduce in evidence, therefore, is not necessary to establish that fact, and plaintiffs’ motion to remand the case for that purpose must be denied.
The only defect in the construction of the house which is alleged by plaintiffs is the failure of defendant to provide adequate ventilation under the house. We agree with the trial judge that the evidence fails to show that there was any such defect in the construction. The evidence does establish that there was a defect in the installation of the air conditioning unit, which defect caused water to collect between the oak flooring and the sub-flooring, and it seems to us that this circumstance rather than inadequate ventilation is the likely cause of the buckling of the floor. Defendant did not install the air conditioning and is not responsible for any defects in the unit or in the manner in which it was installed.
We, like the trial court, are aware of the keen disappointment which plaintiffs must have experienced in the buckling of the floors of their new home, but the record in this case does not establish that this damage was caused by the failure of the defendant to provide adequate ventilation under the house, and accordingly plaintiffs have failed to show that a redhibitory vice existed in the thing sold.
For the reasons herein assigned, the judgment of the trial court is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.