ELLIS, Judge.
On January 16, 1961, Wilson P. Abraham and L. L. Lindley d/b/a L & A Equipment Co., purchased from the defendant, Dalworth Machinery Company, several pieces of heavy equipment used in construction work described as follows:
1.Used American Model L75 dragline and backhoe, S/N 4246 “W/cat” D-315 Engine, price $7500.00
which was secured by chattel mortgage and note identified therewith providing for 6% from date to maturity and 8% interest after maturity together with reasonable attorney fees of 15% if placed in the hands of an attorney for collection after maturity.
2. Used Northwest Model 25 Motor Crane, S/N 19013 with Buda engine and crane carrier, for $25,000.00
secured by a chattel mortgage and note identified therewith in the sum of $25,000.00 with interest at 6% from date to maturity and “after maturity for highest lawful contract rate (in Louisiana 8%) together with reasonable attorney fees of 15% due on or before January 16, 1962.”
3. Used Insley Model L dragline s/a 7997 with “cat” D-315 Engine for the. price of $5000.00,
secured by chattel mortgage and note identified there with in the sum of $5000.00 with interest at 6% from date to maturity and after maturity at 8% per annum together with 15% attorney fees, due or before-January 16, 1962.
4. Used Northwest Model 25 dragline S/N 15329 W/Murphy Diesel Engine
together with
5. Used Caterpillar D-6 Tractor S/N 9U9567 W/25 cable control S/N 9023160> and 6 A Bulldozer S/N 16C5378
and
6. Used Allis Chalmers H.D. 9 Tractor S/N 2238 with tractor motive Loader and ripper
together with
7. Used Caterpillar D-7 tractor S/N 7M3004 with cable control and bulldozers.
The consideration for the last above described four pieces of heavy equipment was $29,000.00 of which $3000.00 [1] was paid cash in hand, and the balance of $26,000.00 was *187 •secured by a chattel mortgage and note identified therewith bearing interest at 6% from date to maturity and 8% after maturity, together with 1S% attorney fees if placed in the hands of an attorney for collection after maturity, said note payable in twenty-three successive monthly payments of $1083.33 each and one installment of $1083.41, commencing February 28, 1961 and then on a like date of each month thereafter until fully paid.
The Machinery Finance Corporation became the holder of the note for $25,000.00 secured by the equipment described in No. 2 and the note for $5000.00 secured by the property described in No. 3 above.
No payments were or have ever been made by Lindley and Abraham and it is evident they were called upon to comply with their contract of purchase. There is testimony by the sellers that some objection was made to the machinery during the conversations between the parties in April of 1961, and the defendant offered to accept the return of three pieces of equipment being described in Nos. 1, 2 and 3 to defendant’s yard in Baton Rouge, Louisiana. It is admitted that plaintiff Abraham sent the used American Model 175 Dragline and back hoe S/N 4246 W/“cat” D-315 Engine to the seller’s place of business in Baton Rouge, Louisiana, in accordance with the agreement but did not return any other equipment. Plaintiffs denied having ever received the note back, given for $7500.00 to secure the purchase price of this piece of equipment.
Subsequent to conversation about the machines, which we surmise also involved demands for payment, Lindley and Abraham employed their present attorneys, for on May 21, 1961 they wrote a letter to the president of Dalworth Machinery Company from whom the equipment had been purchased, stating that they represented the parties and?
“ * * * they advised that the equipment purchased has proved so latently defective as to make use of same most impractical and unprofitable. They have expended large sums for repairing these defects, and quite naturally, they look to your company to make these repairs good. Needless to say, there is an implied warranty of fitness which Louisiana law attaches to every sale in this state.
“It would perhaps be useless here to itemize every repair bill expended on these machines inasmuch as we are sure that Mr. Lindley or Mr. Abraham has no doubt advised you fully in this regard. We have been advised that in spite of extensive repairs, our clients have been able to get no use out of two of the machines, namely, (1) the Northwest Model 25 Crane SN 19013 with Buda Engine and Crane Carrier; and (2) American Model 175 Dragline and backhoe SN 4246 with “cat” D-315 Engine. They hereby tender these machines back to you and ask for rescission of the two respective sales.
‡ ❖ ^ ‡
“With regard to your letter to Mr. Lindley dated May 16, 1961, Mr. Lind-ley advises that Southern Equipment & Tractor Company is still billing them for the work on the HD-9 and that apparently some account other than the one indicated was actually credited. However, any error here can be easily corrected.
It is the purpose of this letter to make formal demand in the particulars outlined above and also to serve as formal notice of your default in having failed thus far to abide by your obligations as the seller of the equipment in spite of many requests to so do * * * ”.
No answer was given to the letter of May 21st, by the sellers and/or holders of the note connected with the sale of the equipment, other than the instructions to their attorneys to proceed in their behalf.
*188 On August 1, 1961 suit was filed by Abraham and Lindley doing business as the L & A Equipment Co. for the rescission of the sale as to the used Northwest Model 25 Motor Crane, S./N 19013 with Buda Engine and crane carrier, and for the used American Model 175 dragline and back hoe S/N 4246 “W/cat” D-315 Engine, that the purchase price be returned to them in the event the defendant has negotiated the notes representing the consideration of same, and that said notes be returned to petitioners in the event they have not been negotiated, and the plaintiffs additionally requested the damage which will hereinafter be set forth in connection with the repair of the machines, etc. Plaintiff also asks for a diminution of the purchase price on all the other items of equipment. Plaintiffs set forth that they had incurred bills on the equipment involved in the four acts of sale totalling 17,165.97 as of the date of filing of suit, and on infoi'mation and belief allege that the equipment needed additional repairs in the amount of $7600.00 and that additionally they had expanded the sum of $2684.92 for labor in repairing the items of equipment purchased from the defendant, and had had to rent new equipment during the period the D-6 tractor was being repaired which cost them $2100.00 and had employed attorneys and that the defendant should be held liable for the fee in the amount of $7500.00, and plaintiffs further alleged that they were entitled to collect the sum of $1000.00 representing freight and transportation on the two items of equipment as to which the rescission “is sought”. Plaintiffs further allege that in addition to the return of the total purchase price of $32,500.00 for the two machines for which they sought the rescission of the sale that they were also entitled to $9500.00, representing repairs, transportation and freight charges, inconvenience, and delay time, and expenses of the sale. They then allege they were entitled to a diminution of the price of the sale of the used Inslcy Model L dragline, S/N 9779 with “cat” D-315 Engine in the sum of $2000.00 and reduction of $14,600.00 on the sale of the remaining-four pieces of equipment described and" numbered, supra, 4 through 7 inclusive.
They therefore prayed for judgment in-their favor and against the defendant, Dal-worth Machinery Co., decreeing a rescission of the sale covering the above two described pieces of equipment in the amount of $32,500.00 plus the interest as called for in the contract, and for further judgment in their favor and against the defendant in the sum of $26,100.00, together with a further judgment in their favor and against the-defendant in the sum of $7500.00 representing attorneys fees and for legal interest on all awards from judicial demand until paid', for all costs, and general and equitable relief.
On February 19, 1962 suit was filed by the Machinery Finance Corporation against A. A. Lindley and Wilson Abraham in-which it was alleged the latter owed jointly and in solido to the petitioners the sum of $30,000.00 with interest at the rate of 6% from January 16, 1961 to January 16, 1962’ and with interest at the rate of 8% from. January 16, 1962 until paid together with) 15% additional on both principal and interest as attorneys fees, by virtue of the fact that the plaintiff was the holder in due-course of a certain promissory note in the original amount of $25,000.00 and which was paraphed for identification with an act of sale and chattel mortgage in the sum of $25,000.00 represented by one note and secured by the used Northwest Model 25 Motor crane S/N 19013 with Buda engine and crane carrier. Plaintiff also alleged that it was the holder in due course of the note made and executed by A. A. Lindley and Wilson P. Abraham on January 16, 1961 in the original sum of $5000.00 payable on or before January 16, 1962, which note was. paraphed by notary public for identification with an act of sale and chattel mortgage against used Insley Model L dragline S/N 7997 with “cat” D-315 engine.
Therefore, the plaintiff in this suit prayed for judgment against A. A. Lindley and *189 Wilson P. Abraham, jointly and in solido in the full sum of $30,000.00 with interest at the rate of 6% per annum from January 16, 1961 to January 16, 1962 and with interest at the rate of 8% per annum from January 16, 1962 until paid, together with 15% additional on both principal and interest as attorney fees and all costs of the proceedings.
In the alternative, petitioner prayed for judgment in their favor and against the defendant, L & A Equipment Company, Wilson P. Abraham and A. A. Lindley, jointly and in solido for the sum of $30,000.00 plus interest, attorneys fees and costs as above stated.
The two cases were consolidated for the purpose of trial, separate judgments to be rendered in each.
After trial on the merits in Suit No. 6199 which is Machinery Finance Corporation v. A. A. Lindley, et al, judgment was rendered below rejecting the plaintiff’s demands and dismissing its suit at plaintiff’s costs.
In Suit No. 6198 Wilson P. Abraham et al v. Dalworth Machinery Company which was for the rescission of the sale on two machines and reduction in the price of the others, together with amounts expended for repairs and certain damages and attorney fees, judgment was rendered in favor of Wilson P. Abraham and A. A. Lindley d/b/a L & A Equipment Company and against the defendant rescinding the sale of the used northwest Model 25 motor crane, S/N 19013 with Buda engine and crane carrier, sale price being represented by a $25,000.00 promissory note with chattel mortgage and also rescinding the sale of the used American Model 175 dragline and backhoe S/N 4246 W/ “cat” D-315 Engine, the sale price being represented by $7200.00 (sic) (should be $7500.00) promissory note secured by chattel mortgage, both rescis-sions being effective January 16, 1961. It was further ordered, adjudged and decreed that the defendant, Dalworth Machinery Company, refund to the plaintiff the full sum of $32,500 or in lieu thereof shall deliver unto plaintiff forthwith the two notes executed by plaintiff for the purchase of said property, the American Model 175 dragline, having been delivered to defendant, the Northwest model 25 motor crane shall be delivered forthwith to defendant at Baton Rouge, Louisiana. It was further ordered, adjudged and decreed that there be further judgment in favor of the plaintiff and against the defendant in the full sum of $16,600.00 representing the reduction of the purchase price of one used Insley Model L Dragline S/N 7997 with “cat” D-315 Engine by $2000.00 and the reduction of the purchase price of one used Northwest Model 25 dragline S/N 15329 W/Murphy Diesel Engine; one used caterpillar D-6 tractor S/N 9U9567 Cable control S/N 9023160 and 6 A bulldozer S/N 16C5378; One used Allis Chalmers H.D. 9 Tractor S/N 7M3004 with cable control and bulldozer by $14,600.-00 as of January 16, 1961. It is further ordered, adjudged and decreed that the defendant pay the legal interest from the date of judicial demand on August 1, 1961 until paid and all costs of this suit.
From the judgments rendered in these suits, motions for new trial were denied and appeals were perfected to this court.
The law is well-settled covering redhibition and diminution of price in LSA-Civil Code and the jurisprudence concerning the vices of things sold which give occasion to such action in LSA-C.C. articles pertinent to the facts of the case are set forth:
“Art. 2520. Redhibition, definition. Redhibition is the avoidance of sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
“Art. 2521. Apparent defects discoverable by buyer. Apparent defects, *190 that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.”
“Art. 2530. Proof of existence of vice before sale. The buyer who institutes the redhibitory action, must prove that the vice existed before the sale was made to him. If the vice has made its .appearance within three days immediately following the sale, it is presumed to have existed before the sale.”
It is also well-settled in our jurisprudence that the continued use of purchased articles after discovery of its defective condition relegates the buyer to an action for reduction of price. Roby Motors Co. v. Price, La.App., 173 So. 793; Sidney Machine Tool Company v. Blanchard, 186 La. 476, 172 So. 532; Phillip Werlein Ltd. v. Glick, La.App., 154 So. 492; Templeman Bros. Lumber Co. v. Fairbanks Morse and Company, 129 La. 983, 57 So. 309.
A decision in this suit for a rescission .and diminution of price will also be decisive •of a judgment to be rendered in the suit by Machinery Finance Corporation v. A. A. Lindley et al., La.App., 167 So.2d 196. We will first discuss the demand for rescission •of the sale of the Northwest model 25 Motor Crane with Buda engine and crane ■carrier which was purchased for $25,000.00 and of the used American Model 175 Drag-line and backhoe, S/N 4246 W/“cat” D-315 engine, which had been purchased for $7500.00.
The judgment of the lower court on the question of the rescission of the sale of these two machines was decided mainly upon its understanding of the testimony by the seller that he had agreed to the return of these two pieces of equipment, and that by the letter of May 31, 1961 some four and a half months after the purchase and use of the other equipment, the buyers had made a sufficient tender. We cannot agree with our learned brother below that the defendant by agreeing to the return of this equipment had admitted such defects as would sustain a legal rescission and it was not necessary for plaintiffs to sustain such an action by a preponderance of the testimony.
The testimony of L. C. Fuller, an officer of the Dalworth Machinery Company, defendant herein, was to the effect that the purchasers made objections to the two machines for which they now seek a rescission of the sale and at that time the sellers, believing the machinery to be well worth the price, agreed to accept the return of the three pieces of equipment provided the purchasers would return same to their yard in Baton Rouge, Louisiana. Mr. Lindley, one of the purchasers, when testifying denied returning either one of the machines to the sellers yard in Baton Rouge, but finally admitted that if any one of the two machines was returned it was done by Mr. Abraham. Mr. Abraham admitted the return of the used American Model 175 Dragline and backhoe, identified as No. 1, supra, in this opinion, to the yard of the sellers, defendant herein, the Dalworth Machinery Company. He did not return the used Northwest Model 25 Motor crane described under No. 2, which was purchased for $25,000.00, nor the Insley Model L dragline being No. 3 and which had been sold to plaintiffs for $5000.00.
We are convinced from the record that the sellers did agree when objection was made to the equipment described in Nos. 1 and 2, supra, prior to the letter of May 31st, 1961 written by the attorneys for the buyers, that they would accept the return of the three pieces of equipment at their yard in Baton Rouge, Louisiana, which was the domicile of Lindley and Abraham, although the sellers were domiciled in Texas and the agreement for the sale and delivery was made to the buyers in Texas, and they made arrangement and paid for its transportation to Baton Rouge. The fact that the purchasers returned the equipment described in No. 1 to the sellers yard in Baton Rouge, Louisiana, is hot only most convincing but strongly corroborative of the sellers version as to the agreement reached with regard to the return of the equipment. The *191 buyers definitely decided not to return the equipment described in Nos. 3 and 2, the latter being the Northwest Model 25 motor crane with Buda engine and crane carrier. The plaintiffs have used this equipment since its purchase and under the law are not entitled to a rescission, but only to a reduction provided they support such an action by sufficient proof.
It is also more than passing strange that if this Northwest Model 25 motor crane with Buda engine and crane carrier had been extensively repaired and was sufficiently defective as at the time of sale to justify a rescission and although plaintiffs have offered in evidence invoices for repairs made on each one of the other machines, there are no such invoices offered in evidence as to any repairs on this piece of equipment.
On the trial, which took place approximately two and one-half years after the purchase of the equipment, Abraham when asked if he had gotten much use out of the Northwest Motor crane, answered “Well, about the first six or eight months we used it practically nil. Then we became involved again as I said in the law suit. We had very little use for it and we would try to rent it or lease it and we couldn’t do so so we put it on the job and if we had use of it we would use it, if we didn’t we would let it sit there.” This is a positive admission that this machine was usable and rentable and, therefore, considering all the testimony with regard to the rescission of the sale of this particular machine, the Northwest Model 25 motor crane, we are firm in our opinion that the plaintiffs have utterly failed to prove the necessary facts which would entitle them to the relief sought, nor would they be entitled to a reduction in price under the evidence.
There is no question but that the other piece of equipment, the used American Model 175 dragline and backhoe, was returned in accordance.with the specific agreement to take it back if returned to the sellers yard in Baton Rouge, La., but the plaintiffs complained and so testified, that they have never received the $7500.00 note given .in consideration of the purchase price, although an officer of the defendant company testified that he thought it had been returned. Neither counsel asked the officials of the defendant company whether the note had ever been negotiated and therefore the testimony stands in the record that the sellers thought they had returned the note but the purchasers testified they had never received it. From the evidence, we feel confident the note had not been negotiated at date of trial. The sale of this piece of equipment was totally separate from the sale of the other equipment. Under the facts we will reserve the rights of the plaintiffs to bring appropriate legal proceedings to protect themselves on this particular note and to obtain the cancellation of the chattel mortgage with which this note was identified. The cost of such proceeding to await the completion of such an action and to be fixed by the lower court.
Counsel for defendant has amply and correctly set forth the. law with regard to rescission and diminution applicable to> this case and we take the liberty of quoting as follows:
“In an action for rescission, as well as for reduction of the price,[2] the purchaser is obligated to prove that the vice was present before the sale.[3] Our courts have uniformly held that the buyer who does not make such a showing, is not entitled to recovery. Harding v. Ed Taussig Edsel Motors, Inc., 130 So.2d 517 (La.App. 3 Cir., 1961); O’ *192 Malley v. Jones, 138 So.2d 445 (La.App. 3 Cir.); Brock Furniture Company v. Carroll, 86 So.2d 715 (La.App. 1 Cir., 1956); King v. Moore, 61 So.2d 253 (La.App. 2 Cir., 1952); Womack v. Lafayette Furniture Company, Inc., 50 So.2d 843 (La.App.Orl.1951); Wrenn v. New Orleans Chair Company, 145 So. 40 (La.App.Orl.1932); Guest & Viziano Sheet Metal Works, Inc. v. Hardouin, [18 La.App. 342] 138 So. 448 (1931); Philip Werlein v. Madsen, 10 La.App. 550, 120 So. 237 (1929); Goode-Cage Drug Co. v. Ives, 16 La.App. 383, 133 So. 813 (1931); Langlinais v. Soileau, 58 So.2d 274 (La.App. 1 Cir., 1952); Capella v. Taulli, 53 So.2d 271 (La.App.Orl.1951); Schexnayder v. Stansbury, 45 So.2d 545 (La.App.Orl.1950); Brewster v. Shreveport Brass Works, [19 La.App. 618] 141 So. 424 (2 Cir., 1932).”
Plaintiffs suit for diminution of price of the remaining equipment is based almost entirely upon the repair bills which have been introduced in evidence on the remaining five pieces of equipment. However, these repair bills are dated from February, ’61 to March 18, ’63, whereas plaintiffs claimed a rescission and diminution as the result of defects justifying such an action as of sale date, Jan. 16, 1961. Plaintiffs have continuously used this equipment and were using all of it except Allis Chalmers H.D. 9 on May 8 and 9, 1963, the date of the trial of this cause. It is believed that the subsequent repairs were most probably due to the use by plaintiffs rather than actual vices existent at time of sale. There is no question but that the average repair record of heavy construction equipment is frequent. Plaintiff asked for a reduction of $2000.00 in the price of the used Insley Model L. Dragline, S/N 7997 with “cat” D-315 Engine which sold for $5000.00. The defendants contend that all machinery was sold as is except for the Allis Chalmers H D 9 S/N 2238 W/tractor motive loader and ripper, although defendants witnesses frankly testified that this machine was good but old.
Before proceeding to further discussion of the Insley, we wish to state that we believe the record supports the conclusion that the tracks and rollers are clearly visible to the eye and that Lindley or any other mechanic trained to repair heavy equipment could have examined these parts of equipment and determined their condition by looking on the date of the sale. Even though they did not do this for reasons which they have stated and we have restated herein, there was nothing to prevent such inspection after the machines were delivered to them in Baton Rouge on or about January 16, 1961, or within a few days thereafter and prior to putting these machines to work. There is no proof of apparent defects or vices within these machines within the three day period. The plaintiffs rely completely or in the main upon the list of repairs which they have introduced in the record. This Insley machine was used apparently from the time they got it and until May 24, 1961, which was the last day prior to the filing of the suit that any repairs were made upon the machine and plaintiffs have listed the following repairs during that time. On February 15, 1961 we find an invoice for one used Insley Fairlead for Model L Machine, $265.00. There is no testimony as to what a Fairlead is, what part a Fairlead plays in the operation of the machine, nor where it is located or anything about it other than the invoice. On March 31, 1961 we find an invoice for “reline one Insley brake band. Furnished exchange friction and reconditioned cab lock eye bolt. For a total of parts and labor of $41.73. It is not shown what condition the removed brake band was in but we presume it was worn out or would not have been replaced and there is no testimony as to how long these brake bands last when the machine is used. The lining and the rivet cost $11.60, the exchange swing friction $22.41 and the cab lock eye bolt $1.50. The balance of the bill is for labor. We do not consider this as a serious defect and do not know from the evidence whether it was due to wear and tear resulting from the use of the machine *193 by the plaintiffs. On May 17, 1961 we find an invoice for a sprocket which cost $39.93, together with a tax of $1.20 made $41.13. We do not know whether this sprocket was broken by virtue of the use of the machine or whether it was worn out when they bought it. However, it would appear that if this sprocket was worn out at the time of the sale the other sprockets should have been in the same condition unless the others had been replaced prior to the sale and this one was old. In other words, we can only guess; there is no testimony. On May 24, 1961 we find an invoice from the Southern Equipment and Tractor Company, Inc., which states “sent service man to job site to check and repair cab plate. Service man returned to our shop, picked up welder, returned to job site, welded and repaired plate, installed spring and made necessary adjustments.” For this the parts cost 72‡, the labor $110.06, or a total parts and labor of $111.48, 3% tax $3.34, mileage 35 miles $3.50 and mechanic’s expense $1.25 for a total bill of $119.57. It can safely be concluded from this invoice that this machine was on the job site and presumably had been used there although the site was not given on the invoice nor in the testimony but there is nothing to identify the plate or whether it was defective or broken at the date of the sale or as a result of its use by the plaintiffs. Therefore, the repairs from January 16, 1961 to August 15, 1961 totalled $466.43 on this machine. The suit herein was filed on August 1, 1961 and we believe is to be adjudged of that date insofar as repairs are concerned for it is on that date that the plaintiff alleged that they are entitled to a reduction of $2000.00 in the price of this machine because of its condition on the date of the sale and they offer as proof the invoice of repairs showing the amount expended, as above stated prior to the filing of the suit. It is true that thereafter repairs were made on this machine, the largest being on September 29, 1961 in the amount of $1061.69. We do not believe that this court can assume from the mere fact of the making of repairs some nine months after the purchase of the machine which had been in use by the plaintiffs that it necessitated the same such repairs on the date of the sale on January 16, 1961. Although the invoices for repairs introduced in evidence list the last date as November 30, 1961 in the sum of $204.87, this machine was evidently in use thereafter and as late as February 1963, as the machine was brought to the Louisiana Welding & Press Shop which is owned by Mr. Busby on that date and he testified that the necessary repairs were only on the undercarriage. He had to rebuild the tracks and rollers, both of the tumblers, one of the idlers, as one was past rebuilding and he had to replace one dry sprocket.
We do not believe that the proof supports any reduction in the price of this Insley Model L dragline.
We will next discuss the reduction in the price of the Allis Chalmers H.D. 9 S/N 2238 W/tractor motive loader and ripper for which the evidence shows the plaintiffs paid $8000.00 of the $29,000.00 shown in the act of sale which included four machines. Aside from legal warranty, this machine was guaranteed as to the engine and when complaints were made with regard to it the defendant at their expense put a new “engine kit” into this machine. In addition, the invoice repair shows that the plaintiffs began repairs on January 26, 1961 and through July 14, 1961 had spent $2937.15. The testimony is conclusive that the machine in a sense went completely to pieces and was thereafter salvaged by using parts for repairs in other machines. It is shown that a new machine of this kind would have cost approximately $30,000.00, and using the testimony that is applicable to the salvage price of the D-7 cat, we believe that approximately $3000.00 would have been a fair price on the date of the sale. We believe that the plaintiffs have shown that this machine was really so defective on the date of the sale that had they known it they would not even have purchased it for salvage value. However, they have *194 ! asked for reduction in the price and accordingly we hereby grant a reduction in the amount of $5000.00 in the price of this machine. We see no need for further detailed discussion of the evidence as applicable to this machine.
Let us consider the request for the reduction in price of the Caterpillar D-7 tractor described under No. 7 above. Lind-ley, one of the plaintiffs, testified that he was told this machine was approximately 17 years old when it was purchased, but there is reliable testimony by defendants that it was 25 to 27 years of age at the time it was purchased and that the $3000.00 paid for it was salvage value in such a business. The plaintiffs purchased most of this equipment with the idea of reselling it but for some reason this was not carried out and the machinery was converted to their own use. We believe that the Court should take into consideration the age of the machinery and the sale price. A new machine of this kind would have cost approximately $25,-000.00. The repairs on this machine beginning February 10, 1961 with a $61.53 invoice, which we regard as minor to heavy equipment, through September 10, 1962, amounted to $7308.86, and the machine was in use on the date of the trial, May 1963. These machines have been used and rented to others for use, however, the plaintiffs did not detail how much they had received from rental or specifically just how much use they had gotten out of all of these machines other than the Allis Chalmers H.D. 9.
The invoice repairs show that plaintiffs have spent slightly less than $1000.00 on this machine through March 28, 1961. This included some work on the rollers which we believe would have been apparent had they examined this machine prior to purchase. ^Their excuse was that it was cold and had rained and the lot or storage area was very (muddy, and they depended entirely upon the statement of the seller that the machines had been through their shop and were ready to be used. It seems strange that the plaintiffs, who were experienced, and Mr. Lindley was an expert on heavy equipment, should not have inquired or asked to be shown exactly what was done to these machines if they expected them to perform the heavy work required of such equipment for any sustained length of time with only minor repairs. They certainly should have been able within sixty days to definitely evaluate the equipment. Apparently they must have thought this machine was worth the money, for after spending approximately $900.00 on it in two months or through March 28, 1961, they again on October 14, 1961 paid a repair bill of $71.15 and on November 11, 1961, $162.87, and on November 15, 1961, $109.-49, for a total additional of $343.51 or approximately $1300.00. In fact, up through September 20, 1962 or approximately 21 months they spent $7308.86 on this machine. However, this machine was being used during the time it was not being repaired, and was still being used in May 1963. It appears that the plaintiffs expected to put some money into this machine and must have been satisfied with it for even after they filed their suit in August of 1961 they kept spending money for repairs on this machine. It is not definitely shown exactly what use this machine was put to during the time they had it other than it must have been doing hard work. As stated by the District-Judge, if this machine was as defective at the time of purchase as the repairs would indicate, we fail to understand why they did not ask for a rescission of this sale rather than a diminution of price. For example, on June 11, 1962, they had a complete overhaul of this machine amounting to $2271.63. Of course, this was approximately a year and a half after they had purchased it and most likely the repairs were due to the wear and tear from the work performed. Under the facts we do not believe they are entitled to any diminution in the price of this old machine.
There is no specific testimony by anyone in this record fixing a specific amount of diminution of price as to any one of the four machines involved in the same sale *195 and which are described under Nos. 4, 5, 6, and 7, supra. The plaintiffs have asked for a reduction of $14,600.00 in the combined price of $29,000.00 set forth as the consideration for the four machines. In this purchase was the Caterpillar D-7 for which the plaintiffs paid $3000.00, and the Allis Chal-mers H.D. 9, $8000.00. Exactly how much reduction plaintiffs expected in the price of each machine was not alleged in the petition nor shown by any definite testimony.
The testimony does not reveal nor does the petition allege the price paid for each of the two remaining machines, the Northwest Model 25 dragline and the Caterpillar D-6 tractor. The price of both was $18,000.00 by deducting $11,000.00, price of the D-7 tractor and Allis Chalmers D-9, from total price of $29,000.00 for the four. Rather than remand the case we will decide it on evidence in the record. On the Caterpillar D-6 tractor the plaintiffs spent $5,-749.62 through June 27, 1961 or within 5 months, for repairs. We agree that the majority were major repairs and were mainly brought about by a bent frame as repairs were made and in a short time the undercarriage and most everything connected with it had to be again repaired. When the extensive repairs were made on June 27, 1961 totalling $3807.80 the bent roller frame was discovered and corrected. We do not believe it was evident by visual inspection and for the reasons given that it existed at the time of the sale, we will allow a reduction of $6000.00 for the machine.
There were no repairs made to the Northwest Model Crawler 25 dragline until May 15, 1961 in the amount of $376.00, and May 17, 1961, $325.00. These amounts are shown on cover sheets and each item is supposed to have an invoice attached to support it but there were none for these two entries on the cover sheet. We do not know what these repairs covered. There was no more repair to this machine until January 6, 1962 or approximately one year after purchase and use by plaintiffs. A general overhaul was apparently made on this machine June 20, 1962 or one and one-half years after purchase. Based upon the evidence and law, we do not believe a reduction is justified in the price of this machine.
It is therefore ordered that the judgment of the lower court be amended as follows:
It is ordered that the judgment of the lower court rescinding the sale of the Northwest Model 25 motor crane S/N 19013 with Buda engine and crane carrier be reversed and the rescission thereof is hereby denied.
It is further ordered that the judgment of the lower court rescinding the sale of the-used American Model 175 dragline and backhoe S/N 4246 “W/cat” D-315 engine be reversed and set aside as this machine by mutual agreement had been returned to the defendants prior to the filing of the suit.
It is further ordered that the Dalworth Machinery Company return to the plaintiffs herein the note for $7500.00 secured by chattel mortgage on the Used American model dragline and backhoe, described above, on or before ten days subsequent to the finality of this judgment.
It is further ordered that in default of the return of this note all rights of plaintiffs, Wilson P. Abraham, A. A. Lindley, and the L & A Equipment Company be reserved against the Dalworth Machinery Company to bring appropriate legal proceedings to protect themselves as to this particular note and to obtain the cancellation of the chattel mortgage with which this note was identified. It is further ordered that the cost of such proceeding to await the completion of any such action and to be fixed by the Lower Court.
For the above and foregoing reasons it is further ordered, adjudged and decreed that the judgment of the District Court rendered upon plaintiffs action for diminution or reduction of price as to the other 5 machines in the full sum of $16,400.00 be amended by denying any reduction on the *196 Insley Model L dragline, S/N 7997 W/cat D-31S engine; and the Caterpillar D-7 Tractor, S/N 7M3004 with cable control and bulldozer.
It is further ordered, adjudged and decreed that there be a reduction in the price of the Allis Chalmers H.D. 9 S/N 2238 with tractor, motive loader and ripper, in the full sum of $5000.00 and a reduction in the price of the used Caterpillar D-6 tractor S/N 9U9567 W/25 cable control, S/N 9023160 and 6 A bulldozer S/N 16C5378, in the full sum of $6000.00 for a total reduction in price of $11,000.00.
It is further ordered, adjudged and decreed that the costs in this suit and in Machinery Finance Corporation vs. A. A. Lindley, et al, No. 6199 of this court, be paid one-half by Dalworth Machinery Company, and one-half by A. A. Lindley, Wilson P. Abraham and L & A Equipment Company.
Amended in part and reversed in part.

. This was the consideration for the Caterpillar D-7 tractor.

. Art. 2544. “The action for a reduction of price is subject to the same rules and the same limitations as the redhibi-tory action.”

. Art. 2530. “The buyer who institutes a redhibitory action must prove that the vice existed before the sale was made to him. If the vice has made its appearance within three days following the sale, it is presumed to have existed before the sale.”